# UNITED STATES *v.* REYNOLDS.

# UNITED STATES *v.* BROUGHTON.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA.

Nos. 478, 479. Argued October 23, 1914.—Decided November 30, 1914.

Congress passed §§ 1990 and 5526, Rev. Stat., and § 269, Criminal Code, abolishing and prohibiting peonage under the authority conferred by § 2 of the Thirteenth Amendment to enforce § 1 of that amendment, thereby undertaking to strike down all laws, regulations and usages in the States and Territories which attempted to maintain and enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons in the liquidation of any debt or obligation.

Peonage is a condition of compulsory service based upon the indebtedness of the peon to the master. The basal fact is indebtedness. *Clyatt* v. *United States,* 197 U. S. 207.

Where a person charged with crime has, after confession, been sentenced to pay a fine and costs and then been released on the payment of a fine by a surety with whom he has made an agreement to work continuously for a specified period for the specified amount so paid for the fine and costs, as provided by the laws of Alabama, and he is liable to separate punishment if he fails to carry out the contract, the relation established between that person and the surety is that of peonage and falls within the prohibition of the Thirteenth Amendment and the laws enacted to enforce it.

Constant fear of punishment under the criminal law renders work compulsory. *Bailey* v. *Alabama,* 219 U. S. 219.

While this court follows the decisions of the state court in determining the constitutionality of state statutes under the state constitution, and ordinarily follows the construction given to such statutes by the state court, where such a decision really determines the legal effect of a state statute in a case involving the Constitution and laws of the United States, this court determines for itself whether that statute does or does not violate the Constitution of the United States and the laws passed in pursuance thereof.

The validity of a system of state law will be adjudged by its operation and effect upon rights secured by the Federal Constitution and offenses punished by Federal statutes.

213 Fed. Rep. 345, 352, reversed.

THE facts, which involve the construction of certain penal statutes of Alabama and their constitutionality under the Thirteenth Amendment to the Constitution, and also of the Peonage Laws of the United States, are stated in the opinion.

*The Solicitor General* for the United States:

The indictments charge an offense within the meaning of the Federal peonage act.

The peonage act of March 2, 1867, Rev. Stat., §§ 1990, 5526; Criminal Code, § 269, is a valid exercise of congressional power under the Thirteenth Amendment. *Bailey* v. *Alabama*, 219 U. S. 219; *Clyatt* v. *United States*, 197 U. S. 207.

Section 6846, Code, Alabama, 1907, is unconstitutional as in conflict with the Thirteenth Amendment and with the legislation authorized by it and enacted by Congress, the Alabama decisions notwithstanding. *Ex parte Davis*, 95 Alabama, 9; *Lee* v. *State*, 75 Alabama, 29; *Peonage Cases*, 123 Fed. Rep. 671; *Shepherd* v. *State*, 110 Alabama, 104; *Simmons* v. *State*, 139 Alabama, 149; *Smith* v. *State*, 82 Alabama, 40.

No sentence of involuntary servitude ever was or ever could have been imposed by the State and therefore the State had no right in the labor of these convicts, nor could it transfer such right to anyone.

Under the Alabama statutes it is only where the fine and costs are not presently paid, or secured by confession of judgment, with proper sureties, that any sentence to hard labor can be enforced for their satisfaction. *Bailey* v. *State*, 87 Alabama, 44, but see *S. C.*, 219 U. S. 219; *Bowen* v. *State*, 98 Alabama, 83; *In re Newton*, 94 Alabama, 431.

Therefore the confession of judgment on the part of the convicts operated to discharge them, and the State had no right or power to further restrain their liberty.

The indebtedness for the satisfaction of which the labor is to be performed is an indebtedness to the surety and not to the State—a private debt, not a public penalty.

There is no correlation between the penalties which the State might have imposed for non-payment in the first instance and those fixed by these labor contracts.

See also *Buckalew* v. *Tenn. Coal & Iron Co.,* 112 Alabama, 146; *State* v. *Allen,* 71 Alabama, 543; *State* v. *Etowah Lumber Co.,* 153 Alabama, 77; *State* v. *Stanley,* 52 Arkansas, 178; *Winslow* v. *State,* 97 Alabama, 68.

*Mr. William L. Martin,* with whom *Mr. Robert C. Brickell,* Attorney General of the State of Alabama, was on the brief, for defendants in error:

There is but one point in these cases: The offense of peonage does not exist by virtue of the operation of §§ 7632, 6846 of the Alabama Code.

The offense of peonage, which was sought to be abolished by § 1990, Rev. Stat., and for the commission of which punishment was prescribed by § 5526, Rev. Stat., Crim. Code, § 269, has been defined by this and other courts as a status or condition of compulsory service based upon the indebtedness of the peon to the master. The basal fact is indebtedness. *Jaremillo* v. *Romero,* 1 N. Mex. 190, 194; *Peonage Cases,* 123 Fed. Rep. 671, 673 (Ala.); *United States* v. *McClellan,* 127 Fed. Rep. 971; *Peonage Cases,* 136 Fed. Rep. 707; *In re Peonage Charge,* 138 Fed. Rep. 686; *United States* v. *Cole,* 153 Fed. Rep. 801; *United States* v. *Clement,* 171 Fed. Rep. 974; *Clyatt* v. *United States,* 197 U. S. 207, 215; *Hodges* v. *United States,* 203 U. S. 1, 33; *Bailey* v. *State,* 219 U. S. 219, 242.

Those provisions apply only to actions based on contracts, express or implied, and do not extend to actions

originating in tort. *Ex parte Hardy,* 68 Alabama, 303, 316.

The sentence of a convict to additional imprisonment for embezzlement in lieu of his restoring to the injured party the amount embezzled is not regarded as imprisonment for debt. See Act of July 1, 1902, 32 Stat. 691.

The sentence and judgment violated the statute providing that no person shall be imprisoned for debt. *Freeman* v. *United States,* 217 U. S. 539, 544.

The inhibition is limited to contract liabilities, and is not applicable to fines, forfeitures, mulcts, damages for wrong and tort. *Hanson* v. *Fowle,* 1 Sawyer, 497, 506; *United States* v. *Walsh,* Deady, 281, 286; *Carr* v. *State,* 106 Alabama, 35, note.

Though the convict may pay the fine and costs due the State and thereby gain his release, such cannot be regarded as a debt. *Nelson* v. *State,* 46 Alabama, 186, 189; *Caldwell* v. *State,* 55 Alabama, 133, 135; *Lee* v. *State,* 75 Alabama, 29, 30; *Smith* v. *State,* 82 Alabama, 40, 41; *Ex parte King,* 102 Alabama, 182, 183; *Carr* v. *State,* 106 Alabama, 35; *Brown* v. *State,* 115 Alabama, 74, 79; *United States* v. *Walsh,* 1 Abb. (U. S.) 66, 71; *Stroheim* v. *Deimel,* 73 Fed. Rep. 430; *Freeman* v. *United States,* 217 U. S. 539, 544.

By the confession of judgment the nature of the convict's obligation is not changed so far as he is concerned; the State chooses, with his consent, to substitute for his labor and service, and imprisonment, a civil liability on the part of the surety. *Smith* v. *State,* 82 Alabama, 40; *Shepherd* v. *State,* 110 Alabama, 104, 105; *Simmons* v. *State,* 139 Alabama, 149, 150.

After confession of judgment and execution of contract a convict cannot obtain his release from his surety by the payment of a sum of money.

Under the provisions of § 6846, the defendant may be prosecuted, not for any debt he owes his surety, for none exists, but as a punishment for a violation of the contract

which has been approved by the court and in which his labor for his surety has been substituted for hard labor for the State or county. *Ward* v. *State*, 88 Alabama, 202; *Smith* v. *State*, 82 Alabama, 40; Code, § 6846; *Shepherd* v. *State*, 110 Alabama, 104.

If the contract provides for advances, it is void and its performance cannot be enforced. *Smith* v. *State*, 82 Alabama, 40; *Ex parte Davis*, 95 Alabama, 9, 16; *Winslow* v. *State*, 97 Alabama, 68; *Elston* v. *State*, 154 Alabama, 62. See also *Salter* v. *State*, 117 Alabama, 135, 137; *Wade* v. *State*, 94 Alabama, 109; *Wynn* v. *State*, 82 Alabama, 55, 57; *McQueen* v. *State*, 138 Alabama, 63, 67.

The State retains control of the convict. It does not lose control over him when judgment has been confessed, but still retains authority to sentence the convict to punishment. *Bailey* v. *State*, 87 Alabama, 44, 46.

In interpreting the Alabama statutes on this point, this court will follow the decisions of the highest court of that State. *Shelby* v. *Guy*, 11 Wheat. 361, 367; *Nesmith* v. *Sheldon*, 7 How. 812, 818; *Van Rensselaer* v. *Kearney*, 11 How. 297, 318; *Webster* v. *Cooper*, 14 How. 488, 504; *Leffingwell* v. *Warren*, 2 Black. 599; *Haver* v. *District No. 108*, 111 U. S. 701; *Detroit* v. *Osborne*, 135 U. S. 492, 498; *Irrigation District* v. *Bradley*, 164 U. S. 112, 154; *Hooker* v. *Los Angeles*, 188 U. S. 314, 320; *Hairston* v. *Danville & Western Ry.*, 208 U. S. 598; *Siler* v. *L. & N. R. R. Co.*, 213 U. S. 175, 191; *Trimble* v. *Seattle*, 233 U. S. 218, 219.

*State* v. *Etowah Lumber Co.*, 153 Alabama, 77, 78, distinguished, as in that case the convict was taken from the custody of his surety by virtue of a warrant issued for the commission of another offense than that for which he was then serving.

A single decision of a state court which departs from the whole course of the decisions of that State will not be followed. *Gibson* v. *Lyon*, 115 U. S. 439, 446; *Hardin* v. *Jordan*, 140 U. S. 371, 387.

The statute is a humane one.  If the convict does his duty according to his contract there is no reminder of his convict-state, save at the end of each month when his wage is withheld.  He is practically a free man and the law delights in the liberty and the happiness of the citizen. *Peonage Cases,* 123 Fed. Rep. 671, 676.

The Thirteenth Amendment does not contain authority for Congress to withhold from a State the right to make its own laws for punishing those duly convicted of crime. If Congress has authority to legislate regarding a State leasing its convicts out to work, there is nothing to prevent its prescribing the kind of work to be performed, the working hours and the food and clothing furnished.  See debates in Congressional Globe on adoption of Thirteenth Amendment in 1863–4, Part 2, pp. 1313–25, 1364–70, 1419–24, 1437–46, 1456–65, 1479–90.

The Thirteenth Amendment was not intended to introduce any novel doctrine with respect to certain descriptions of service which have always been treated as exceptional.  *Robertson* v. *Baldwin,* 165 U. S. 275, 282; *Clyatt* v. *United States,* 197 U. S. 207, 216.

The court cannot read into the Thirteenth Amendment exceptions which do not appear and refuse to give life to the one exception which does appear therein, to-wit: conviction for crime.


MR. JUSTICE DAY delivered the opinion of the court.


These cases were argued and considered together, and may be disposed of in a single opinion.  They come here under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246, as involving the construction of the statutes of the United States which have for their object the prohibition and punishment of peonage.  Case No. 478, *United States* v. *Reynolds,* was decided upon demurrer and objections to a plea filed to the indictment.  The case

against Broughton, No. 479, was decided upon demurrer to the indictment. In both cases the District Court held that no offense was charged. 213 Fed. Rep. 345, 352. Both indictments for holding certain persons in a state of peonage were found under § 1990 of the Revised Statutes of the United States, as follows:

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in the Territory of New Mexico, or in any other Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of the Territory of New Mexico, or of any other Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void," and § 269 of the Criminal Code (§ 5526, Rev. Stat.), which provides that—

"Whoever holds, arrests, returns, or causes to be held, arrested or returned, or in any manner aids in the arrest or return of any person to a condition of peonage, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

The facts to be gathered from the indictments and pleas, upon which the court below decided the cases and determined that no offense was charged against the statutes of the United States as above set forth, are substantially these: In No. 478, one Ed Rivers, having been convicted in a court of Alabama of the offense of petit larceny, was fined $15, and costs $43.75. The defendant Reynolds appeared as surety for Rivers, and a judgment by confession was entered up against him for the amount of the fine and costs, which Reynolds afterwards paid to the State. On May 4, 1910, Rivers, the convict, entered into a written contract with Reynolds to work for him as a

farm-hand for the term of nine months and twenty-four days, at the rate of six dollars per month, to pay the amount of fine and costs. The indictment charges that he entered into the service of Reynolds, and under threats of arrest and imprisonment if he ceased to perform such work and labor, he worked until the sixth day of June, when he refused to labor. Thereupon he was arrested upon a warrant issued at the instance of Reynolds from the County Court of Alabama, on the charge of violating the contract of service. He was convicted and fined the sum of one cent for violating this contract, and additional costs in the amount of $87.05, for which he again confessed judgment with G. W. Broughton as surety, and entered into a similar contract with Broughton to work for him as a farm-hand at the same rate, for a term of fourteen months and fifteen days.

In No. 479, the case against Broughton, E. W. Fields, having been convicted in an Alabama state court, at the July, 1910, term, of the offense of selling mortgaged property, was fined fifty dollars and costs, in the additional sum of $69.70. Thereupon Broughton, as surety for Fields, confessed judgment for the sum of fine and costs, and afterwards paid the same to the State. On the eighth day of July, 1910, a contract was entered into, by which Fields agreed to work for Broughton as a farm and logging hand for the term of nineteen months and twenty-nine days, at the rate of six dollars per month, to pay the fine and costs. He entered into the service of Broughton, and, it was alleged, under threats of arrest and imprisonment if he ceased to labor, he continued so to do until the fourteenth day of September, 1910, when he refused to labor further. Thereupon Broughton caused the arrest of Fields upon a charge of violating his contract, and upon a warrant issued upon this charge, Fields was again arrested.

The rulings in the court below upon the plea and demurrers, were that there was no violation of the Federal

statutes, properly construed, and also held that the conduct of the defendants was justified by the provisions of the Alabama Code, upon which they relied. These provisions are as follows:

"7632. Confession of Judgment by Defendant for Fine and Costs.—When a fine is assessed, the court may allow the defendant to confess judgment, with good and sufficient sureties, for the fine and costs.

"7633. Execution Issues as in Civil Cases.—Execution may issue for the fine and costs, or any portion thereof remaining unpaid, as in civil cases.

"7634. On Default in Payment of Fine and Costs, Imprisonment or Hard Labor Imposed.—If the fine and costs are not paid, or a judgment confessed according to the provisions of the preceding section, the defendant must either be imprisoned in the county jail, or, at the discretion of the court, sentenced to hard labor for the county as follows: If the fine does not exceed twenty dollars, ten days; if it exceeds twenty and does not exceed fifty dollars, twenty days; if it exceeds fifty and does not exceed one hundred dollars, thirty days; if it exceeds one hundred and does not exceed one hundred and fifty dollars, fifty days; if it exceeds one hundred and fifty and does not exceed two hundred dollars, seventy days; if it exceeds two hundred and does not exceed three hundred dollars, ninety days; and for every additional one hundred dollars, or fractional part thereof, twenty-five days.

"7635. When Additional Hard Labor Imposed for Costs; Rules in Reference to.—If on conviction judgment is rendered against the accused that he perform hard labor for the county, and if the costs are not presently paid or judgment confessed therefor, as provided by law, then the court may impose additional hard labor for the county for such period, not to exceed ten months, as may be sufficient to pay the costs, at the rate of seventy-five cents per day, and the court must determine the time required

to work out such costs at that rate; and such convict must be discharged from the sentence against him for costs on the payment thereof, or any balance due thereon, by the hire of such convict, or otherwise; and the certificate of the judge or clerk of the court in which the conviction was had, that the costs, or the residue thereof, after deducting the amount realized from the hire of the convict, have been paid, or that the hire or labor of the convict, as the case may be, amounts to a sum sufficient to pay the costs, shall be sufficient evidence to authorize such discharge. ·

"6846. Failure of Defendant to Perform Contract with Surety Confessing Judgment for Fine and Costs.—Any defendant, on whom a fine is imposed on conviction for a misdemeanor, who in open court signs a written contract, approved in writing by the judge of the court in which the conviction is had, whereby, in consideration of another becoming his surety on a confession of judgment for the fine and costs, agrees to do any act, or perform any service for such person, and who, after being released on such confession of judgment,' fails or refuses without good and sufficient excuse, to be determined by the jury, to do the act, or perform the service, which in such contract he promised or agreed to do or perform, must, on conviction, be fined not less than the amount of the damages which the party contracting with him has suffered by such failure or refusal, and not more than five hundred dollars; and the jury shall assess the amount of such damages; but no conviction shall be had under this section, unless it is shown on the trial that such contract was filed for record in the office of the judge of probate of the county in which the confession of judgment was had, within ten days after the day of the execution thereof.

"6848. Damages Paid to Injured Party out of Fine Imposed.—From the fine imposed under the two preceding sections, when collected, the damages sustained by

the party contracting with such defendant must be paid to such person by the officer collecting the same."

The defendants having justified under this system of law, the question for consideration is, Were the defendants well charged with violating the provisions of the Federal statutes, to which we have referred, notwithstanding they undertook to act under the Alabama laws, particularly under the provisions of § 6846 of the Alabama Code, authorizing sureties to appear and confess judgment and enter into contracts such as those we have described?

The Thirteenth Amendment to the Constitution of the United States provides:

"Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"Section 2. Congress shall have power to enforce this article by appropriate legislation."

It was under the authority herein conferred, to enforce the provisions of this amendment by appropriate legislation, that Congress passed the sections of the Revised Statutes here under consideration. *Clyatt* v. *United States,* 197 U. S. 207; *Bailey* v. *Alabama,* 219 U. S. 219.

By these enactments Congress undertook to strike down all laws, regulations and usages in the States and Territories which attempted to maintain and enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in the liquidation of any debt or obligation. To determine whether the conduct of the defendants charged in the indictments amounted to holding the persons named in a state of peonage, it is essential to understand what Congress meant in the use of that term prohibiting and punishing those guilty of maintaining it. Extended discussion of this subject is rendered unnecessary in view of the full consideration thereof in the prior adjudications of this

court. *Clyatt* v. *United States, supra; Bailey* v. *Alabama, supra.*

Peonage is "a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness. . . . One fact existed universally; all were indebted to their masters. . . . Upon this is based a condition of compulsory service. Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the mode of origin, but none in the character of the servitude. The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. But peonage, however created, is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the service is enforced. A clear distinction exists between peonage and the voluntary performance of labor or rendering of services in payment of a debt. In the latter case, the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an action for damages for breach of that contract, can elect at any time to break it, and no law or force compels performance or a continuance of the service." *Clyatt* v. *United States,* 197 U. S. 207, 215.

Applying this definition to the facts here shown, we must determine whether the convict was in reality working for a debt which he owed the surety, and whether the labor was performed under such coercion as to become a compulsory service for the discharge of a debt. If so, it amounts to peonage, within the prohibition of the Federal statutes. The actual situation is this: The convict instead of being committed to work and labor as the statute provides for the State, when his fines and costs are unpaid, comes into court with a surety, and confesses judgment in the amount of fine and costs, and agrees

with the surety, in consideration of the payment of that fine and costs, to perform service for the surety after he is released because of the confession of judgment. The form of the contract, said to be the usual one entered into in such cases, is given in the record, and reads:

"LABOR CONTRACT.

"The State of Alabama, Monroe County:

"Whereas, at the May term, 1910, of the county court, held in and for said county, I, Ed. Rivers, was convicted in said court of the offense of petit larceny and fined the sum of fifteen dollars, and judgment has been rendered against me for the amount of said fine, and also in the further and additional sum of forty-three and 75/100 dollars, cost in said case, and whereas J. A. Reynolds, together with A. C. Hixon, have confessed judgment with me in said court for said fine and cost. Now, in consideration of the premises, I, the said Ed. Rivers, agree to work and labor for him, the said J. A. Reynolds, on his plantation in Monroe County, Alabama, and under his direction as a farm hand to pay fine and cost for the term 9 months and 24 days, at the rate of $6.00 per month, together with my board, lodging, and clothing during the said time of hire, said time of hire commencing on the 4 day of May, 1910, and ending on the 28 day of Feby., 1911, provided said work is not dangerous in its character.

"Witness our hands this 4 day of May, 1910.

"ED (his x mark) RIVERS.
"J. A. REYNOLDS.

"Witness:

"JOHN M. COXWELL."

It also stands admitted in this record, that the sureties in fact paid the judgment confessed. Looking then to the substance of things, and through the mere form which they have taken, we are to decide the question whether the labor of the convict, thus contracted for, amounted to

VOL. CCXXXV—10

involuntary service for the liquidation of a debt to the surety, which character of service it was the intention of the acts of Congress to prevent and punish. When thus at labor, the convict is working under a contract which he has made with his surety. He is to work until the amount which the surety has paid for him—the sum of the fine and costs—is paid. The surety has paid the State and the service is rendered to reimburse him. This is the real substance of the transaction. The terms of that contract are agreed upon by the contracting parties, as the result of their own negotiations. The statute of the State does not prescribe them. It leaves the making of contract to the parties concerned, and this fact is not changed because of the requirement that the judge shall approve of the contract. When the convict goes to work under this agreement, he is under the direction and control of the surety, and is in fact working for him. If he keeps his agreement with the surety, he is discharged from its obligations without any further action by the State. This labor is performed under the constant coercion and threat of another possible arrest and prosecution in case he violates the labor contract which he has made with the surety, and this form of coercion is as potent as it would have been had the law provided for the seizure and compulsory service of the convict. Compulsion of such service by the constant fear of imprisonment under the criminal laws renders the work compulsory, as much so as authority to arrest and hold his person would be if the law authorized that to be done. *Bailey* v. *Alabama*, 219 U. S. 219, 244; *Ex parte Hollman*, 60 S. E. Rep. 19, 24.

Under this statute, the surety may cause the arrest of the convict for violation of his labor contract. He may be sentenced and punished for this new offense, and undertake to liquidate the penalty by a new contract of a similar nature, and, if again broken, may be again prosecuted, and the convict is thus kept chained to an ever-

turning wheel of servitude to discharge the obligation which he has incurred to his surety, who has entered into an undertaking with the State or paid money in his behalf. The re-arrest of which we have spoken is not because of his failure to pay his fine and costs originally assessed against him by the State. He is arrested at the instance of the surety, and because the law punishes the violation of the contract which the convict has made with him.

Nor is the labor for the surety by any means tantamount to that which the State imposes if no such contract has been entered into, as these cases afford adequate illustration. In the case against Reynolds, Rivers was sentenced to pay $15 fine and $43.75 costs. Under the Alabama Code, he might have been sentenced to hard labor for the county for ten days for the non-payment of the fine, and assuming that he could be sentenced for non-payment of costs under § 7635 of the Alabama Code, he could have worked it out at the rate of seventy-five cents per day, an additional 58 days might have been added, making 68 days as his maximum sentence at hard labor. Under the contract now before us, he was required to labor for nine months and twenty-four days, thus being required to perform a much more onerous service than if he had been sentenced under the statute, and committed to hard labor. Failing to perform the service he may be again re-arrested, as he was in fact in this case, and another judgment confessed to pay a fine of one cent and $87.75 costs, for which the convict was bound to work for another surety for the term of fourteen months and seventeen days. In the case against Broughton, Fields was fined $50 and $69.70 costs. Under the law he might have been condemned to hard labor for less than four months. By the contract described, he was required to work for Broughton for a period of nineteen months and twenty-nine days.

We are cited to a series of Alabama cases, in which it is

held that the confessed judgment and the contract do not
satisfy the law nor pay the penalty imposed, but the hirer
becomes the transferee of the right of the State to compel
the payment of the fine and costs, and by this exaction of
involuntary servitude the convict has only changed mas-
ters, and that under the Alabama constitution the law is
constitutional, and that the convict is not being imprisoned
for indebtedness.    It is to be observed that the same
learned court, in one of its later deliverances (*State* v.
*Etowah Lumber Company*, 153 Alabama, 77, 78), has said
in speaking of this contract, "the State was in no sense a
party to the contract by which the company acquired the
custody of Falkner [the convict in that case].    It is true
it [the State] permitted the making of the contract, and
provided a punishment for its breach."    Here is a direct
utterance of that court that the State was not a party to
the surety's agreement, but its connection with it was to
permit it, and provide the punishment for its breach.
    True it is that this court follows the decisions of the state
courts, in determining the constitutionality of statutes
under the constitutions of the States; and in considering
the constitutionality of statutes ordinarily accepts their
meaning as construed by the state courts.    The Alabama
decisions, to which we have been referred, are more
strictly speaking determinations of the legal effect of
these statutes than interpretation of any doubtful mean-
ing which may be found within their terms.    Moreover,
we are here dealing with a case which involves the Con-
stitution and statutes of the United States, as to which
this court, by force of the Constitution, and the several
Judiciary Acts which have been enacted by Congress, is the
ultimate arbiter.    In such cases this court must determine
for itself whether a given enactment violates the Con-
stitution of the United States or the statutes passed in
pursuance thereof.    The validity of this system of state
law must be judged by its operation and effect upon rights

secured by the Constitution of the United States and offenses punished by the Federal statutes. If such state statutes, upon their face, or in the manner of their administration, have the effect to deny rights secured by the Federal Constitution or to nullify statutes passed in pursuance thereto, they must fail. *Bailey* v. *Alabama*, 219 U. S. 219, 244; *Henderson* v. *Mayor*, 92 U. S. 259, 268.

Nor do we think this case is controlled by *Freeman* v. *United States*, 217 U. S. 539, cited by counsel for defendants in error. In that case it was held that a money penalty imposed for embezzlement which went to the creditor, and not into the Treasury, under the Penal Code of the Philippine Islands, did not make imprisonment for the non-payment of such penalty equivalent to imprisonment for debt. In that case, although the penalty affixed went to the creditor, it was part of the sentence imposed by the law as a punishment for the crime. In the present case, the contract under which the convict serves for the surety, is made between the parties concerned, who determine and fix its terms, and is not fixed by the State as the punishment for the commission of an offense.

There can be no doubt that the State has authority to impose involuntary servitude as a punishment for crime. This fact is recognized in the Thirteenth Amendment, and such punishment expressly excepted from its terms. Of course, the State may impose fines and penalties which must be worked out for the benefit of the State, and in such manner as the State may legitimately prescribe. See *Clyatt* v. *United States, supra,* and *Bailey* v. *Alabama, supra.* But here the State has taken the obligation of another for the fine and costs, imposed upon one convicted for the violation of the laws of the State. It has accepted the obligation of the surety, and, in the present case, it is recited in the record that the money has been in fact paid by the surety. The surety and convict have made a new contract for service, in regard to the terms of which the

State has not been consulted. The convict must work it out to satisfy the surety for whom he has contracted to work. This contract must be kept, under pain of re-arrest, and another similar proceeding for its violation, and perhaps another and another. Thus, under pain of recurring prosecutions, the convict may be kept at labor, to satisfy the demands of his employer.

In our opinion, this system is in violation of rights intended to be secured by the Thirteenth Amendment, as well as in violation of the statutes to which we have referred, which the Congress has enacted for the purpose of making that amendment effective.

It follows that the judgment of the District Court must be reversed.

*Judgment accordingly.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.

MR. JUSTICE HOLMES concurring.

There seems to me nothing in the Thirteenth Amendment or the Revised Statutes that prevents a State from making a breach of contract, as well a reasonable contract for labor as for other matters, a crime and punishing it as such. But impulsive people with little intelligence or foresight may be expected to lay hold of anything that affords a relief from present pain even though it will cause greater trouble by and by. The successive contracts, each for a longer term than the last, are the inevitable, and must be taken to have been the contemplated outcome of the Alabama laws. On this ground I am inclined to agree that the statutes in question disclose the attempt to maintain service that the Revised Statutes forbid.