## DAVIS v. UNITED STATES.

### LAND v. SAME.

(Circuit Court of Appeals, Fifth Circuit. March 31, 1926. Rehearing Denied April 22, 1926.)

### Nos. 4681, 4697.

**1. Criminal law ⬅⟶620(2)—Indictments for holding in peonage, and for arresting and returning to condition of peonage, and for aiding and abetting therein held properly consolidated for trial (Criminal Code, § 269 [Comp. St. § 10442]; Rev. St. § 1024 [Comp. St. § 1690]).**

Indictments under Criminal Code, § 269 (Comp. St. § 10442), and Rev. St. § 1024 (Comp. St. § 1690) charging that certain defendant held named persons to a condition of peonage, and indictment charging same defendant with having arrested and returned same persons to a condition of peonage, and other defendants with aiding and abetting therein, *held* properly consolidated for trial.

**2. Criminal law ⬅⟶620(2).**

Rev. St. § 1024 (Comp. St. § 1690), relating to consolidation of indictments against any person, applies as well to several defendants as to single defendant.

**3. Slaves ⬅⟶24—In prosecution for holding persons in peonage, evidence affecting things done in court by principal defendant, when persons so held were charged with petty offenses, held admissible (Criminal Code, § 269 [Comp. St. § 10442]).**

In prosecution under Criminal Code, § 269 (Comp. St. § 10442), for holding named persons in peonage, for arresting and returning them to a condition of peonage, and for aiding and abetting therein, evidence that principal defendant procured the arrest of some of persons so held on petty charges, and at hearing before county judge induced pleas of guilty, paid costs assessed against them, and took them away, *held* admissible against all defendants, as proving basal fact of indebtedness essential to peonage.

**4. Slaves ⬅⟶24—Peremptory instruction in prosecution for aiding and abetting in arrest and return to condition of peonage of certain persons held properly denied.**

In prosecution for aiding and abetting in the arrest and return of named persons to a condition of peonage, evidence of particular defendant's guilt *held* sufficient to go to jury, and peremptory instruction properly denied.

**5. Slaves ⬅⟶24—In prosecution for aiding and abetting in arrest and return of certain persons to condition of peonage, fact that arrest involved was a rearrest after escape held not to entitle defendant to acquittal (Criminal Code, § 269 [Comp. St. § 10442]).**

In prosecution under Criminal Code, § 269 (Comp. St. § 10442), for aiding and abetting in arrest and return of certain persons to a condition of peonage, fact that arrest involved was not one made in the first instance, but a rearrest after such persons had escaped, *held* not to entitle defendant to acquittal.

**6. Slaves ⬅⟶24—That defendant, charged with aiding and abetting in arrest and return of certain persons to peonage, did not actually make arrest, held not to entitle him to acquittal (Criminal Code, §§ 269, 332 [Comp. St. §§ 10442, 10506]).**

Defendant, charged under Criminal Code, § 269 (Comp. St. § 10442), with aiding and abetting in arrest and return of certain persons to condition of peonage, *held* not entitled to acquittal on the ground that the actual arrest was affected by others before his arrival, since under section 332 (Comp. St. § 10506), one who aids and abets in an offense is a principal.

**7. Conspiracy ⬅⟶41—If conspiracy is shown, act of one defendant is act of all, though it was not charged.**

Though conspiracy is not charged, if evidence shows its existence, then act of one or more defendants in furtherance of common plan is in law act of all.

**8. Criminal law ⬅⟶1167(2)—Variance between evidence and particular count of indictment held immaterial, where punishment was less than could have been imposed under other counts.**

Alleged variance between evidence and single count of indictment *held* immaterial, where punishment imposed under other counts was less than could have been imposed under any count.

**9. Criminal law ⬅⟶424(1)—In prosecution for holding named persons in peonage, and for arresting and returning such persons to condition of peonage, evidence of efforts to suppress testimony held properly admitted, though it related to only one defendant.**

In prosecution of one defendant for holding named persons in condition of peonage, and of same defendant and others for arrest and return of same persons to a condition of peonage, evidence that principal defendant, after crimes

were committed, sought to suppress testimony of persons so held, *held* properly admitted, though it related only to one defendant.

In Error to the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

M. B. Davis, alias Mood Davis, was convicted of holding certain persons in a condition of peonage, and with Charles Land and others was convicted of arresting and returning the same persons to a condition of peonage, and the named defendants bring error. Judgments affirmed.

Certiorari denied 46 S. Ct. 639, 70 L. Ed. ——.

Philip D. Beall and John M. Coe, both of Pensacola, Fla., and Ira A. Hutchison, of Panama City, Fla, for plaintiff in error Davis.

Wm. Fisher of Pensacola, Fla., and Paul Carter, of Marianna, Fla., for plaintiff in error Land.

Fred Cubberly, U. S. Atty., and George Earl Hoffman, Asst. U. S. Atty., both of Pensacola, Fla.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. These are prosecutions for holding, arresting, and returning four men to a condition of peonage, in violation of section 269 of the Criminal Code (Comp. St. § 10442). Originally there were four indictments, numbered 2068, 2069, 2070, and 2071. Indictment 2068 consists of a single count, and charges M. D. Davis with holding Henry Sanders to a condition of peonage. Indictment 2069, in separate counts, charges Davis with holding George Diamond, Galvester Jackson, and De Witt, Stonan, respectively, to a condition of peonage. Indictment 2070 consists of eight counts, and charges Davis, Charles Land, Carey Whitfield, Frank Daniels, and Will Proctor, all as principals, in the first four counts with arresting, and in the last four counts with returning, Sanders, Diamond, Jackson, and Stonan to a condition of peonage. Indictment 2071 also contains eight counts, and charges Davis, as principal, in the first four counts with arresting, and in the last four counts with returning, separately and severally, Sanders, Jackson, Diamond, and Stonan, respectively, to a condition of peonage, in order to compel them to work for Davis in payment of debts which they owed him. In the last-named indictment, Land, Whitfield, Daniels, and Proctor are charged in each count with aiding and abetting Davis. The holdings to a condition of peonage were alleged to have occurred on September 29, 1924, and the arrests and returns thereto on September 30, 1924.

The four indictments were consolidated for trial over the objection and exception of all the defendants, but during the trial the government was required to elect between indictments 2070 and 2071, and this requirement resulted in the withdrawal of indictment 2070 from the consideration of the jury. Davis was convicted on all counts of the three indictments submitted to the jury, and sentenced to serve 13 months in the penitentiary and to pay a fine of $500. Land was convicted on the first four counts of indictment 2071, which separately charges the arrest to a condition of peonage of Sanders, Diamond, Jackson, and Stonan, and sentenced to serve a year and a day in the penitentiary and to pay a fine of $500. The other defendants were convicted on several counts of indictment 2071, but it is unnecessary to consider their cases as they have not sued out writs of error. Davis and Land have sued out separate writs of error, which may be disposed of in one opinion.

There was evidence for the government to the following effect: In the year 1924 the defendant Davis operated two turpentine farms, one called Camp Sanders, and the other Farmdale, located, respectively, 10 miles west and 25 miles southwest of Wewahitchka, a town in Calhoun county, Fla. Whitfield, Daniels, and Proctor, defendants in the court below, were employees of Davis at his Farmdale place. Defendant Land was not connected in business with Davis, but had a turpentine place of his own near Wewahitchka.

The so-called peons, Diamond and Jackson, went to work for Davis at Camp Sanders in June, 1924. About two weeks after their employment began, they obtained permission to go to River Junction, which is some distance north of Wewahitchka, for the purpose of moving Diamond's family to Camp Sanders. Diamond and Jackson, not having returned, were arrested on August 8 at River Junction, at the instigation of Davis, and taken to Blountstown, the county seat of Calhoun county, on a charge of larceny of property of the value of $8.50 belonging to Davis. When they were brought before the county judge to plead to the charge against them, Davis was present and made the statement, with the ap-

parent approval of the county judge, that if they did not plead guilty they would be imprisoned for a period of eight months, whereupon they both pleaded guilty. At the same time Henry Sanders, another alleged peon, was before the county judge on a charge of larceny from Land's brother of property of the value of $2.75, and he also pleaded guilty. The county judge ordered the three prisoners released on payment of costs.

Davis paid the costs, which amounted to $37.28 against Diamond and Jackson, and $25 against Sanders, and in addition assumed responsibility to Land's brother for a debt of $100, which the latter claimed against Sanders, and took Diamond, Jackson, and Sanders, to his turpentine place at Farmdale, and held them there upon their agreements to work out the debts thus incurred, as well as other claims of indebtedness which he held against Diamond and Jackson. De Witt Stonan was also being held at Farmdale for a debt, but so far as appears had not been charged with crime. The four peons were kept under surveillance, and remained against their will, because of their fear of physical punishment and criminal prosecution, until the night of September 29, 1924, when they, accompanied by the wife of Sanders and the wife of Stonan, secretly left Farmdale with the intention of making their escape. On the next morning, September 30, 1924, they arrived at the home of one May Bell McGee, near Wewahitchka, where the women were left. The four men went around the town and hid in the woods adjacent to what is called the West Arm highway bridge, which it appears was the only practical means of proceeding northward toward Blountstown, with the intention of crossing the bridge at night, when the chances of apprehension would be less than in the daytime. This bridge is about a mile north of Wewahitchka.

Early on the morning of September 30, Davis and his employees, Whitfield, Daniels, and Proctor, appeared in Wewahitchka in search of the escaped laborers. Davis and one other man proceeded across the West Arm bridge to the home of Matthew Brown, the father of Sanders' wife. Upon being assured that Sanders was not at Brown's house, he proceeded on up the road in the direction of Blountstown. Brown then went in his automobile to search for his daughter, and found her and Stonan's wife at the McGee woman's home. He took them in his car, with the intention of taking them to his home.

Davis and his employees overtook them, and took the women out of Brown's car, put them in Davis' car, and carried them back to Wewahitchka, where Proctor took charge of them and kept them under guard. Later in the day, after a consultation between Davis, Land, Whitfield, and Daniels, Davis and Land drove off in Land's automobile. After dark, Sanders, Diamond, Jackson, and Stonan were apprehended by Whitfield and Daniels at the north end of the bridge. Within a short time, variously estimated at from 15 to 30 minutes, Davis and Land arrived on the scene in Land's automobile. The four defendants, each of whom was armed, placed the recaptured men in Land's automobile, and, after making Stonan whip the others, returned with them to Wewahitchka. There Diamond was turned over to Land, and Sanders, Jackson, Stonan, and the two women, who had been left in Proctor's charge, were taken by the other defendants back to Farmdale.

Within a few days H. H. Bowles, a deputy marshal, went to Farmdale to summon Henry Sanders and others as witnesses. He was permitted to testify over objection that Davis asked him what it took to constitute peonage, and then had a conversation with Sanders, and the latter was also permitted ever objection to testify that at that time he was requested by Davis and agreed to tell Bowles or other officers that he had been working for Davis of his own free will, and that he would not show to the officers the signs upon his body of the whipping he had received. Sanders further testified that Davis said "he was a friend of mine, and if I would help him he would help me."

Land moved the court to instruct a verdict of not guilty as to him, on the grounds that the evidence failed to show an arrest, or that he had participated in the arrest, and that there was a variance, in that indictment 2071 charges that Diamond was arrested to be returned to Davis whereas the evidence shows that he was returned to Land. In its charge to the jury the court instructed them that the defendants should be convicted if the evidence satisfied them beyond a reasonable doubt that there had been a holding to a condition of peonage, and that the jury would be warranted in finding a verdict of guilty if the defendants held them to work out a debt. However, in other parts of the charge the court instructed the jury that Davis alone was charged with the offense of holding, that each defendant was entitled to the presumption of innocence, and that any particular

defendant should be acquitted if there was a reasonable doubt of his guilt. Exceptions were duly taken to the above-mentioned rulings and charges of the court.

Defendants join in assignments of error to the effect that the court erred in the order allowing the indictments to be consolidated, and in admitting testimony concerning the original arrests of Sanders, Diamond, and Jackson.

[1] Section 1024 of the Revised Statutes (Comp. St. § 1690) authorizes the consolidation of several indictments against any person upon several charges of crimes connected together, or of the same class, wherever such charges could properly be joined in separate counts of a single indictment. That statute applies as well to several defendants as to a single defendant. Emanuel v. United States, 196 F. 317, 116 C. C. A. 137.

[2] Defendants argue that a consolidation of indictments is not authorized, except where the defendants are the same in all the indictments, and contend that this in effect was the ruling in McElroy v. United States, 164 U. S. 76, 17 S. Ct. 31, 41 L. Ed. 355. In that case six defendants were indicted on two separate charges of assaults to murder different persons on the same day, and for arson on a later day, while three of the defendants were indicted for arson committed on the same day as the assaults to murder. The charges of arson were of the dwelling houses of different persons. It was held that a consolidation could not "be sustained where the parties are not the same, and where the offenses are in no wise parts of the same transaction, and must depend upon evidence of a different state of facts as to each or some of them."

In these cases the offenses charged were closely connected, were of the same class, were alleged to have been committed against the same individuals, and required proof of the same state of facts. As to Davis it hardly can be contended that the consolidation was unauthorized. Land was charged with aiding and abetting in the offense of returning to a condition of peonage. It was necessary to show a previous holding, because otherwise the evidence would have fallen short of showing the offense of returning. Clyatt v. United States, 197 U. S. 207, 25 S. Ct. 429, 49 L. Ed. 726. In these circumstances, it was within the trial court's discretion to refuse a severance. In Milner v. United States, 293 F. 590, we held that the crimes of larceny and receiving goods with knowledge that they had been stolen are of the same class, and that it is permissible to charge the same defendant in separate counts with these offenses.

We think the better rule is that one defendant may be charged in one count with larceny, and another defendant in another count with receiving with guilty knowledge, because in proving the receiving it is necessary to show that a larceny of the same goods has been committed. Redman v. State, 1 Blackf. (Ind.) 429; Commonwealth v. Darling, 129 Mass. 112; Commonwealth v. Mullen, 150 Mass. 394, 23 N. E. 51; 1 Chitty's Crim. Law, 254; 31 C. J. 756. The crimes charged in the case at bar are, to say the least, as closely connected as are the crimes of larceny and receiving stolen goods.

[3] In peonage, "the basal fact is indebtedness." Clyatt v. United States, supra; United States v. Reynolds, 235 U. S. 133, 35 S. Ct. 86, 59 L. Ed. 162. Therefore it was necessary to show that the peons were being held for debt, and the testimony as to what transpired at the office of the county judge was admissible, not only against Davis, but against Land also.

[4, 5] Exceptions to rulings and charges of the court form the basis of additional assignments of error by Land. It was not error to refuse to give the requested peremptory instruction in favor of that defendant. It is argued that the statute denouncing peonage contemplates only an original arrest, and does not have any reference to an arrest made after there has been a holding. It is insisted that Clyatt v. United States, supra, sustains this position, but we do not so understand that case. Of course, a prosecution could be had for an original arrest; but it does not follow that one who rearrests a person who had been previously held to a condition of peonage would be guiltless. The order in which the words, "holds, arrests, returns," appear in the statute, would seem to dispose of this argument. A rearrest is an arrest, and doubtless it would not be necessary to show a previous holding.

[6] It is also contended that Land was entitled to a directed verdict, because he did not participate in the arrest of the peons, who, as he claims, had already been arrested before he and Davis came upon the scene, and because a variance exists between the count, which charges him with aiding and abetting Davis in the arrest of Diamond, and the proof, which was to the effect that Diamond was returned to him, and not to Davis. One who aids or abets in the com-

mission of an offense against the United States is a principal. Criminal Code, § 332 (Comp. St. § 10506). There was no difference in legal effect between indictment 2070, which was abandoned, and indictment 2071, upon which Land was convicted. It may be assumed, without being decided, that the arrest had been completed by Whitfield and Daniels before Davis and Land arrived at the West Arm bridge.

[7] It is a fair inference from the government's evidence that Land and all the other defendants were acting in concert, with intent to apprehend and arrest the escaped laborers and return them to a condition of peonage. That evidence was sufficient to support the conclusions that, pursuant to agreement between all the defendants. Whitfield and Daniels stationed themselves at the bridge for the purpose of intercepting the men they were seeking to find, while Davis and Land made search for them, and that the meeting of the defendants at the bridge was prearranged and not accidental. Although conspiracy be not charged, if it be shown by the evidence to exist, the act of one or more defendants in furtherance of the common plan is in law the act of all. United States v. Gooding, 12 Wheat. 460, 6 L. Ed. 693; Brown v. United States, 150 U. S. 93, 14 S. Ct. 37, 37 L. Ed. 1010. In 2 Wigmore on Evidence, § 1079, will be found a selection of cases to the same effect. See, also, 1 Greenleaf (16th Ed.) § 184a; Underhill's Criminal Evidence, §§ 715, 718; 1 Bishop on Criminal Law (9th Ed.) §§ 629, 630; 2 Bishop's Criminal Procedure (2d Ed.) §§ 1248, 1249.

[8, 9] The question of variance, which was insisted on as to one count of indictment 2071, becomes immaterial, as Land was convicted on three other counts, and his punishment was less than could have been imposed under any count. The conversations Davis had with Bowles and Sanders after the crimes were completed were admissible against Davis, as tending to show an attempt to suppress testimony, so as to shield himself from the consequences of his crimes. Land was not mentioned in these conversations. It is not error to admit evidence which relates only to one of several defendants on trial together.

The charge of the court, taken altogether, was not misleading, as it clearly informed the jury that each defendant was presumed to be innocent until shown beyond a reasonable doubt to be guilty of the offense with which he was charged.

The judgments are affirmed.