**Morris B. MYERS, Plaintiff,**

v.

**Regnal W. GARFF, Jr., et al., Defendants.**

**Civ. No. C86–0693G.**

United States District Court, D. Utah, C.D.

March 4, 1987.

Royal K. Hunt, Salt Lake City, Utah, for plaintiff.

Stephen J. Sorenson, Salt Lake City, Utah, for defendants.

### MEMORANDUM DECISION
### AND ORDER

**J. THOMAS GREENE, District Judge.**

On December 29, 1986, this court heard oral argument on cross motions for summary judgment. Plaintiff was represented by Royal K. Hunt and defendants were represented by Stephen J. Sorenson. After argument this court granted defendant Regnal W. Garff's motion for summary judgment with regard to all claims for monetary damages. The parties were ordered to file contemporaneous supplemental memoranda on the issue of exhaustion of available state remedies, after which the matter was to be submitted for resolution without further oral argument. Based upon review of those supplemental memoranda this court is fully advised and sets forth its Memorandum Decision and Order.

### FACTS

The facts in this case are undisputed. On November 19, 1981, an order was entered in the Juvenile Court of Salt Lake county, State of Utah, requiring that guardianship of plaintiff's son be transferred to the Utah State Division of Youth Corrections for placement into a suitable treatment facility. Thereafter, the Utah State Attorney General's office filed a petition with the Juvenile Court to receive contribution from plaintiff for support and other expenses expended in caring for plaintiff's son. According to Utah Code Ann. § 78–3a–49(1) (1977) the Juvenile Court may enter such an order "after due notice and hearing ... [and] depending on [the parent's] financial resources and other demands on their funds." The statute further provides that an order entered by the Juvenile Court "may be enforced by contempt proceedings, and shall also have the effect of a judgment at law." *Id.* at § 78–3a–49(2). On November 7, 1984, plaintiff failed to appear at a hearing conducted by defendant Judge Regnal W. Garff, Jr. ("Judge Garff") and attended by a representative of the Utah State Attorney General's office. Judge Garff then entered judgment for $1650 in favor of the State of Utah. On November 20, 1985, an Order to Show Cause was issued by Judge Garff directing plaintiff to appear on January 30, 1986, and show cause why he should not make payments to the state for expenditures on behalf of his son. On February 19, 1986, Judge Garff entered a Bench Warrant for plaintiff's arrest as a result of his failure to appear at the scheduled January 30, 1986 hearing. On March 31, 1986, plaintiff appeared at a hearing before Judge Garff which also was attended by defendant Michael F. Skolnick ("Skolnick"), an Assistant Utah State Attorney General. After hearing testimony from plaintiff, Judge Garff stated:

> You know, obviously, you have substantial legal knowledge, and I think you use your legal knowledge to avoid paying some of your obligations. Now, you may have legitimate reasons for that, legal reasons, and you may not, I don't know. . . .
>
> You have indicated that physically, you are well. You obviously are judgment-proof because you don't own any property and you're not working, but I don't— you know, it offends me that you owe this obligation and that you're not taking care of it. It's only—we're talking $1,650, and I just think that you need to assume the responsibility for that obligation, and I'm not going to let you avoid it. . . .
>
> •     •     •     •     •
>
> Well, what I'm going to do is, I'm going to order Mr. Myers to work the obligation off through some court-approved project for the State. . . .

On April 18, 1986, Judge Garff signed an order directing plaintiff to repay his obligation through supervised community ser-

vice. Judge Garff also ordered that plaintiff appear before the court on July 17, 1986, to determine whether his obligation had been satisfied. On July 22, 1986, Judge Garff entered a Bench Warrant for plaintiff's arrest as "a defaulting person in that he failed to attend a court hearing on July 17, 1986, after receiving notice in open court." On July 30, 1986, plaintiff was arrested and jailed.

## ANALYSIS

### I. *Claim of Peonage*

Plaintiff asserts that defendants Garff, Skolnick, and Attorney General David L. Wilkinson ("Wilkinson") have violated plaintiff's rights to due process and equal protection under the Fourteenth Amendment, and plaintiff's right to be free from involuntary servitude under the Thirteenth Amendment. The essence of plaintiff's complaint seems to be that by ordering plaintiff to perform community service to satisfy a civil judgment, defendants have subjected plaintiff to peonage under 42 U.S.C. § 1994 (1982). Congress enacted the predecessor of 42 U.S.C. § 1994 pursuant to its authority under section two of the Thirteenth Amendment to enforce the prohibition against slavery and involuntary servitude. *United States v. Reynolds*, 235 U.S. 133, 143, 35 S.Ct. 86, 88, 59 L.Ed. 162 (1914). The Supreme Court has defined peonage as follows:

It may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness.... Upon this is based a condition of compulsory service. Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the mode of origin, but none in character of the servitude. The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by provision of some law. But peonage, however created, is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the service is enforced. A clear distinction exists between peonage and the voluntary performance of labor or rendering of services in payment of a debt. In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an action for damages for breach of that contract, can elect at any time to breach it, and no law or force compels performance or a continuation of the service.

*Clyatt v. United States*, 197 U.S. 207, 216–17, 25 S.Ct. 429, 430, 49 L.Ed. 727 (1905). A number of issues are raised with regard to application of the peonage statute, as interpreted by the Supreme Court, to these facts.[1] However, after careful review this court has determined that resolution of

---

1. For example, defendants argue that they are absolutely immune from suit for damages, and that under this court's analysis in *Navajo Nation v. District Court for Utah County*, 624 F.Supp. 130 (D. Utah 1985), there can be no injunctive relief in the nature of federal judicial review of a state court ruling. *See id.* at 137 (distinguishing *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984)).

   Defendants Wilkinson and Skolnick also argue that neither of them engaged in any act that caused plaintiff to be placed in peonage. In addition defendant Wilkinson argues that he cannot be found liable based upon respondeat superior.

   Another issue presented is whether the conduct involved comes within an exception to involuntary servitude recognized by the courts. *See Robertson v. Baldwin*, 165 U.S. 275, 282, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1897) (sailor's contracts, military and naval service, and "the right of parents and guardians to the custody of their

   minor children or wards."); *Bailey v. Alabama*, 219 U.S. 219, 243, 31 S.Ct. 145, 152, 55 L.Ed. 191 (1911) ("obligations ... of an apprentice to his master."); *United States v. Reynolds*, 235 U.S. 133, 149, 35 S.Ct. 86, 90, 59 L.Ed. 162 (1914) ("there can be no doubt that the State has authority to impose involuntary servitude as a punishment for crime."); *Butler v. Perry*, 240 U.S. 328, 331, 36 S.Ct. 258, 259, 60 L.Ed. 672, 674 (1916) (duties which individuals owe to the State such as jury duty or required work on public highways); *Hayes v. City of Wilmington*, 451 F.Supp. 696, 703 n. 20 (D.Neb.1978) (imposition of one thousand penalty hours against fireman did not amount to involuntary servitude); *Bobilin v. Bd. of Educ.*, 403 F.Supp. 1095, 1104 (D.Hawaii 1975) (requiring public school children to be involuntarily subjected to cafeteria duty did not violate Thirteenth Amendment).

   Another issue that needs to be resolved is whether plaintiff truly feels a compulsion to perform the community service. Defendants

such issues must be made in the state courts of Utah.

## II. *Abstention—The Supreme Court Case of Younger v. Harris*

In *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961) the Supreme Court held that a plaintiff could seek relief under 42 U.S.C. § 1983 in federal court even if the alleged conduct was also violative of state law. The court concluded that the "federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is involved." *Id.* However, a plaintiff's ability to seek relief in federal rather than state court is limited by the doctrine of abstention as developed by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* abstention doctrine is that "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27 L.Ed.2d 688 (1971).

In *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) the Supreme Court extended *Younger* abstention to the context of a civil case. In *Huffman* the court determined that a public nuisance statute, as applied to a motion picture theatre, was "more akin to criminal prosecution than are most civil cases." *Id.* at 604. In addition, the court emphasized the principle of comity in avoiding interference with ongoing civil actions brought by the state. *Id.* at 599–604, 95 S.Ct. at 1205–1208. Based upon that principle the Supreme Court reversed an order by the district court which had declared the nuisance statute unconstitutional and enjoined the state proceeding. *Id.* at 612–13, 95 S.Ct. at 1212. The Supreme Court next applied *Younger* abstention in a civil context in the case of *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). In *Juidice* a judgment debtor was held in contempt

after disobeying a subpoena to appear in supplemental proceedings brought by judgment creditors to enforce their judgments. Rather than seek relief in state court, the judgment debtors brought a class action in federal court under 42 U.S.C. § 1983 to enjoin the state contempt proceedings based upon federal constitutional grounds not previously raised. The Supreme Court stated:

> These principles [of comity] apply to a case in which the State's contempt power is involved. A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest.... The contempt power lies at the core of the administration of a State's judicial system.... Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process if "an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding." ... Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the Stat[e]," ... but also "can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.' "

*Id.* at 335–36, 97 S.Ct. at 1217–18 (citations omitted).

Based upon Supreme Court precedent, this case falls within the *Younger* abstention doctrine as it applies to civil cases. As with all of the Supreme Court cases which apply *Younger* in a civil context, the state is directly involved in the pending state proceeding. *Etlin v. Robb*, 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982) (White, J., dissenting from denial of certio-

---

have argued that no effort or threats have been made to enforce the order. In that regard Article I § 16 of the Utah Const. may become important: "There shall be no imprisonment for debt except in cases of absconding debtors."

*See also State v. Reese*, 43 Utah 447, 135 P. 270, 276 (1913) (to uphold imprisonment it must be shown that debtor did not refuse to pay because he was insolvent and unable to give security).

rari, joined by Brennan, J.). The State of Utah is the judgment creditor seeking to enforce its judgment. This case also involves interests similar to a court's contempt powers which were recognized in *Juidice* to be "at the core of the administration of a State's judicial system...." 430 U.S. at 335, 97 S.Ct. at 1217. Judge Garff's order in this case involves essential interests of state trial judges in exercising discretion when enforcing their prior judgments. In fact the contempt power which is "at the core" is closely intertwined with a judge's ability to enforce judgments. In addition, the State of Utah has a substantial interest in seeing that support from parents or others is made when it becomes necessary to place a child within the legal custody of the state. A final interest of the state is that the alleged unconstitutionality of Judge Garff's order has never been tested in state court. Indeed it would reflect "negatively upon the state courts' ability to enforce constitutional principles" not to give the state court the opportunity.

It is also of no consequence that plaintiff apparently has let the time run for bringing a timely appeal. As the Supreme Court stated in *Juidice:* "Here it is abundantly clear that [plaintiff] has an *opportunity* to present their federal claims in the State proceedings. No more is required to invoke *Younger* abstention. There is no support ... for the ... belief that the state courts must have an actual hearing ... in

order for *Younger* and *Huffman* to apply." *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977); *see also DeSpain v. Johnston,* 731 F.2d 1171, 1180 (5th Cir.1984). In any event, in the case at bar it appears that plaintiff may have remedies available. Plaintiff may be able to move under Utah R.Civ.P. 60(b)(5) for relief from Judge Garff's order on the grounds that "the judgment is void." The peonage statute, 42 U.S.C. § 1994, provides that establishment of peonage, if proven, renders "all acts, laws, resolutions, orders, [or] regulations ... null and void." Plaintiff may also be able to seek relief from the Utah Supreme Court based upon an extraordinary writ under Utah R.Civ.P. 65B(b)(2) which provides for relief "[w]here an inferior tribunal, board or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion...."

Based upon the foregoing plaintiff's claims fall within the *Younger* abstention doctrine,[2] and accordingly plaintiff's complaint is dismissed without prejudice to resolution in state court.[3]

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

---

**2.** There is a limited exception to *Younger,* if a plaintiff can prove bad faith or a desire to harass on the part of the defendants. In this case, as in *Juidice v. Vail,* 430 U.S. 327, 338, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977), the exception "may not be utilized unless it is alleged and proved that [the state judges] are enforcing the contempt procedures in bad faith or are motivated by a desire to harass.... There are neither allegations, proof, nor findings to that effect here." Another exception to *Younger* is said to exist if a state statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Younger v. Harris,* 401 U.S. 37, 53–54, 91 S.Ct. 746, 754–56, 27 L.Ed.2d 669 (1971) (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). This exception has rarely been invoked by courts. *See* J. Cook & J. Sobieski, Jr., *Civil Rights Actions*

¶ 3.15 at 3–158 (1986); Justice Stevens considers that the chances of coming within the exception are "quite remote." *Trainor v. Hernandez,* 431 U.S. 434, 463, 97 S.Ct. 1911, 1928, 52 L.Ed.2d 486 (1977) (Stevens, J., dissenting); *see also* H. Fink & M. Tushnet, *Federal Jurisdiction: Policy and Practice* at 625–26 (the reluctance of the federal courts to "cast aspersions" on the ability of the state courts to honor their obligations under the supremacy clause have rendered the *Younger* exceptions "(almost) empty").

**3.** The Supreme Court has recognized that dismissal without prejudice is the proper resolution when the *Younger* abstention doctrine applies. *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Resolution of the issues asserted in the state court will have preclusive effects if plaintiff chooses to file a subsequent suit in federal court. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 467–68, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982).