**NAVAJO NATION; Navajo Nation, as parens patriae for Jeremiah Halloway, Cecelia Saunders, Bessie Begay, Plaintiffs,**

v.

**DISTRICT COURT FOR UTAH COUNTY, FOURTH JUDICIAL DISTRICT, STATE OF UTAH; Honorable David Sam; Dan and Patricia Carter, Defendants.**

**Civ. No. C85–317G.**

United States District Court,
D. Utah, C.D.

Sept. 30, 1985.

Craig J. Dorsay, Window Rock, Ariz., for plaintiffs.

Stephen J. Sorenson, Utah Atty. Gen. Office, Salt Lake City, Utah, and Richard B. Johnson, Howard, Lewis & Sorenson, Provo, Utah, for defendants.

## MEMORANDUM DECISION IN FURTHERANCE OF ORDER GRANTING SUMMARY JUDGMENT

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on August 29, 1985, on plaintiffs' Motion for Summary Judgment, the Motion for Summary Judgment of defendants District Court for Utah County, Fourth Judicial District, State of Utah, and Honorable David Sam; and the Motion to Dismiss or in the Alternative, for Summary Judgment of defendants Dan and Patricia Carter. Craig J. Dorsay of the Navajo Nation Department of Justice appeared on behalf of the plaintiffs, Stephen J. Sorenson of the Utah Attorney General's office appeared on behalf of defendants District Court for Utah County, Fourth Judicial District, State of Utah and Honorable David Sam, and Richard B. Johnson of Howard, Lewis & Sorenson appeared on behalf of defendants Dan and Patricia Carter. Having reviewed extensive memoranda of law and exhibits which were filed with the Court, and having heard extensive oral arguments of all counsel, the Court granted the defendants' Motions for Summary Judgment and denied the plaintiffs' Motion for Summary Judgment. Having further reviewed all matters and being fully advised, the Court now sets forth its Memorandum Decision as was contemplated at the time the oral orders were rendered. This Memorandum Decision is incorporated into the orders made on August 29, 1985.

### FACTUAL BACKGROUND

This action arose out of an adoption proceeding in the District Court for Utah County, Fourth Judicial District, State of Utah. Jeremiah Halloway, the subject of the proceeding, was born on May 14, 1977, to plaintiff, Cecilia Saunders, a full-blooded Navajo, a member of the Navajo Tribe and a domiciliary of the Navajo Reservation. Jeremiah lived the first six months of his life with his mother, after which he was under the care of his maternal grandmother, Bessie Begay. In March of 1980, a maternal aunt removed Jeremiah from the

reservation with the oral consent of the mother and took him to Utah for adoptive placement with defendants Dan and Patricia Carter. In May of 1980, the natural mother appeared in the District Court for Utah County and executed a Consent to Adoption after which defendants Dan and Patricia Carter then filed a petition for adoption. Defendant Judge David Sam ordered counsel for defendants Dan and Patricia Carter to give notice seeking the consent of the Navajo Tribe before proceeding with the adoption, and notification was given approximately five months later to plaintiff Navajo Nation. Some two years after the petition for adoption was filed, in May of 1982, the Navajo Nation appeared in the lawsuit as intervenor and filed a motion to dismiss the proceeding and transfer jurisdiction to the tribe on the basis of the Indian Child Welfare Act of 1978 (ICWA), Pub.L. No. 95–608 (codified at 25 U.S.C. § 1901 et seq.). After a hearing on the matter, on July 14, 1982, defendant Judge David Sam awarded temporary custody to Dan and Patricia Carter, and ruled that the domicile of the child was that of the adoptive parents, that good cause existed for the State Court to retain jurisdiction, and that the requirements of the ICWA had been satisfied. The State Court gave the parties additional opportunity to present further evidence on the domicile issue, and after receiving that evidence, entered an order dated October 6, 1983, reaffirming its finding that the child's domicile was that of the adoptive parents and that good cause existed under the ICWA for the State Court to retain jurisdiction. The Court also ruled that there had been an abandonment of the child.

On October 12, 1984, the District Court of the Navajo Nation for Window Rock found that, pursuant to Navajo common law and statute, the domicile of Jeremiah had at all times remained within the boundaries of the Navajo Reservation and that the Navajo Tribe had exclusive jurisdiction under tribal statutes, common law and the ICWA to determine the custody of Jeremiah Halloway. Just prior to the date set for trial on termination of the parental rights,

the Navajo Nation filed a Motion for Full Faith and Credit and to Dismiss in the state court proceedings, based upon the ruling of the Navajo District Court that it had exclusive jurisdiction over the adoption proceedings and that the Fourth District Court was without jurisdiction. At the beginning of the trial on October 22, 1984, the State Court denied the motion as untimely, and went ahead with the trial on the termination of parental rights. On January 28, 1985, defendant Judge David Sam entered his decision, finding:

(1) That the evidence (including expert testimony) established beyond a reasonable doubt that to return Jeremiah to his Indian custodians would result in serious emotional or physical damage to him;

(2) That active efforts have been undertaken to attempt the rehabilitation of the Indian family and have failed; and

(3) That the biological mother knowingly and voluntarily abandoned the child as defined in Utah Code Annotated 78–3a–48(1).

The State Court therefore granted the petition for adoption, and on February 28, 1985, the Navajo Nation filed a Notice of Appeal of Judge David Sam's decision to the Utah Supreme Court. That appeal presently is pending and being pursued by all parties. On March 15, 1985, plaintiffs filed the instant action in the United States District Court for the District of Utah.

The action before this Court contains fifteen separate claims for relief based on alleged violation by the defendants of the ICWA and the United States Constitution. Six claims seek recovery under 42 U.S.C. § 1983, alleging violation of civil rights; eight claims seek declaratory relief under 28 U.S.C. § 2201, alleging that the exercise of state jurisdiction was void; and one pendent claim alleges that the placement of Jeremiah with the adoptive parents violated the Interstate Compact on Placement of Children, Utah Code Ann. § 55–8b–1, et seq. The plaintiffs also seek monetary relief against all defendants for violation of civil rights, and declaration of their rights

under the ICWA, the United States Constitution and state law.

## INDIAN CHILD WELFARE ACT

The Indian Child Welfare Act was enacted in 1978 to remedy perceived inequities in adoption standards for Indian children. The Act represents congressional recognition of the interest of Indian Tribes in the preservation of their valuable heritage. Background and cultural differences between society generally and the Indian nations had greatly influenced social and adoptive agencies to increase the numbers of Indian children being placed in foster and adoptive homes. A general misunderstanding of Indian culture compounded the numbers of Indian children being separated from their families. In 1978, after recognizing that greater than one-fourth of all Indian children were separated from their families and placed in foster homes, adoptive homes or institutions, Congress declared that "[t]he wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today." H.Rep. No. 1386, 95th Cong., 2d Sess., 9, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7530, 7531. Therefore, in 1978, Congress enacted ICWA, the purpose of which was

> to protect the best interest of Indian children and to promote the stability and security of Indian tribes and families by establishing minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes or institutions which will reflect the unique values of Indian culture and by providing for assistance to Indian tribes and organizations in the operation of child and family service programs.

*Id.* at 1. This Court is aware of and shares that concern. As one court stated:

> Each individual is an amalgam of the predominant religious, linguistic, ancestral and educational influences existent in his or her surroundings. Indian people, whether residing on a reservation or not, are immersed in an environment which is in most respects antithetical to their traditions. Furthermore, the cultural diversity among Indian tribes is unquestionably profound yet often not fully appreciated in our society
>
> . . . .
>
> Preservation of Indian culture is undoubtedly threatened and thereby thwarted as the size of any tribal community dwindles. In addition to its artifacts, language and history, the members of a tribe are its culture. Absent the next generation, any culture is lost and necessarily relegated, at best, to anthropological examination and categorization.

*Matter of M.E.M.,* 195 Mont. 329, 635 P.2d 1313, 1317 (1981). This Court is cognizant of the responsibility to promote and protect the unique Indian cultures of this and other states. This Court also is aware, however, that the ICWA and principles of equity require that the interests of the individual also must be protected, not in derogation of the Act but in compliance with its specific provisions.

In order to further Congress' desire to promote the welfare of Indian children, families and culture, the ICWA lays jurisdiction over Indian child adoption proceedings in the tribe or the state respectively, depending on the domicile of the child. The Indian tribe has exclusive jurisdiction over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation. 25 U.S.C. § 1911(a) (1982). A state court has jurisdiction over foster care placement or termination of parental rights of Indian children not domiciled or residing within the reservation, but the Act requires the state court to transfer the proceeding to the tribe upon petition of either parent, the custodian or the child's tribe, absent good cause to the contrary or objection of either parent. *Id.* § 1911(b). The Act also requires that the United States, every state and territory and every Indian tribe "give full faith and credit to the public acts, records, and judicial proceedings of Indian tribes applicable to Indian child custody proceedings to the same

extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." *Id.* § 1911(d).

■ The Act necessarily contemplates the state court's involvement in Indian child adoption proceedings. Indeed, the ICWA grants concurrent jurisdiction in state and federal courts over adoption proceedings brought under its provisions. 25 U.S.C. §§ 1911, 1921 (1982); 28 U.S.C. § 1360(a) (1982). "Where the Act applies, the state court has a duty to exercise its jurisdiction over actions brought thereunder, since to decline jurisdiction in such a case would violate the supremacy clause of the federal [C]onstitution." *E.A. v. State,* 623 P.2d 1210, 1215 n. 13 (Alaska 1981) [citing *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *Mondou v. New York, New Haven & Hartford Ry. Co.,* 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912) ]. A state court therefore has a right and a need to determine its own jurisdiction in Indian child adoption cases brought before it, and a judge making such a determination clearly would be acting within the scope of his judicial capacity, regardless of the propriety of his ruling on the jurisdictional question.

### JURISDICTION IN INDIAN CHILD ADOPTION PROCEEDINGS

Jurisdiction in such proceedings is based upon a determination of the domicile of the child. That question was squarely before the state District Court, which took cognizance of the issue and made its determination after fully hearing evidence and arguments of the parties. That Court found that the child's domicile was in Utah with the adoptive parents, and that transfer of the proceedings to the tribal court would not be in the best interests of the child. Those findings are currently on appeal before the Utah Supreme Court.

Plaintiffs ask this Court to render a declaration of their rights under the ICWA and the United States Constitution, contending that these are additional issues not raised in the state court proceedings. But those claims presented here as alleged constitutional and statutory infringements will live or die on a determination of the issue of domicile, an issue that was fully presented and litigated in the state proceeding which is now pending before the Utah Supreme Court. Reversal on the domicile issue in state court basically would give the plaintiffs the declaratory relief they seek in this Court. On the other hand, affirmance would open the avenue of redress before the Supreme Court of the United States on the constitutional issues. It would be premature and inappropriate for this Court to enter rulings of any kind in the present posture of this litigation.

### CLAIMS FOR DECLARATORY RELIEF

[2–4] Because the issue of domicile was fully litigated in the state court proceeding, and now the question of the propriety of the State Court's application of law and determination of domicile is pending before the state's highest court, this Court exercised its discretion under the Declaratory Judgment Act by dismissing plaintiffs' claim for declaratory relief. It is appropriate for federal courts to deny a declaratory judgment under 28 U.S.C., Section 2201 where the issues raised are likely to be fully adjudicated in an action pending in state court at the time the declaratory judgment action is filed in federal court. Moore's Federal Practice ¶ 0.220, at 2387–88 (1985) [citing *Miller v. Miller,* 423 F.2d 145 (10th Cir.1970).] The United States Supreme Court has recognized and upheld exercise of discretion by district courts in such circumstances, ruling that a district court is under no compulsion to exercise jurisdiction, and recognizing that:

> The decision in such circumstances is largely committed to the discretion of the District Court.... (and) ... that such deference may be equally appropriate even when matters of substantive federal law are involved in the case. (Footnote omitted.)

*Will, U.S. District Judge v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) *cited in Jicarilla*

*Apache Tribe v. United States,* 601 F.2d 1116, 1130–31 (10th Cir.1979). *See also, State Farm Mut. Auto Ins. Co. v. Scholes,* 601 F.2d 1151, 1155 (10th Cir.1979), and *Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), wherein the Court affirmed district court orders granting motions to dismiss federal actions seeking adjudication of water rights, where concurrent state court actions had previously been initiated. The issue of domicile and whether it was appropriate for the state court to assume jurisdiction over the adoption proceedings in this case is precisely the question presented before the Utah Supreme Court. This Court does not sit as an appellate court for state decisions, and declaratory judgment should not be used to re-examine what has been adjudicated in another forum. 1A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 0.220, at 2388 n. 7 (1985). See *American Benefit Life Ins. Co. v. United Founders Life Ins. Co.,* 515 F.Supp. 800, (W.D.Okl. 1980), and cases cited therein.

All parties had full and complete opportunity to be heard in the state court proceedings. It would not be in the interests of judicial economy, federal-state comity or the avoidance of piecemeal and duplicative litigation for this Court to act upon plaintiffs' claims for declaratory relief or the Section 1983 claims.

## SECTION 1983 CLAIMS

▇ The United States Supreme Court has held that rules of res judicata and collateral estoppel are applicable to Section 1983 actions, where a final judgment on the merits of an action has been rendered in state court and the same issues that were or could have been raised in that action are later sought to be raised in a federal action. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Court stated in the *Allen* case:

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.... Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.... As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication.

*Id.* at 94, 101 S.Ct. at 414 (citations omitted).

To allow relitigation of the question of the child's domicile, and ultimately the appropriateness of the state court's taking jurisdiction of the case for purposes of the Section 1983 claims now asserted, would be to deny the state court system the full faith and credit to which it is entitled, and would violate principles of res judicata and collateral estoppel. In the recent case of *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Supreme Court stated:

> It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.

*Id.* 465 U.S. at 81, 104 S.Ct. at 896, 79 L.Ed.2d at 61. Utah follows the general principles of res judicata and collateral estoppel as discussed above. See *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873 (Utah 1983); *Bernard v. Attebury,* 629 P.2d 892 (Utah 1981). This Court finds that the basis for the plaintiffs' claims for violation of civil rights under Section 1983 was fully litigated on the merits in the state proceeding and this Court is bound by the State Court's decision.

## FULL FAITH AND CREDIT: DECISION OF THE DISTRICT COURT OF THE NAVAJO NATION

As observed above, the decision of the District Court of Utah is entitled to full

faith and credit. But plaintiffs ask this Court to find that the decision of the District Court of the Navajo Nation for Window Rock that the Navajo Tribe had exclusive jurisdiction over the adoption proceeding and that Jeremiah was domiciled on the reservation was entitled to full faith and credit by the State District Court. The determination by the District Court of the Navajo Nation was made some four and one-half years after the Consent of Adoption was given by the child's mother in open court in the District Court of Utah, and after extensive evidence was presented on the domicile issue following a substantial period of total inaction and inattention to the matter by the plaintiff Navajo Nation.

■■■ There is no question that the ICWA requires universal recognition of the acts, records and judicial proceedings of any Indian Tribe. The Act states:

> The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

25 U.S.C. § 1911(d). This statute does not require, however, that the public acts, records, and judicial proceedings of any Indian tribe be accorded greater weight than the public acts, records, and judicial proceedings of a state. Indeed, an Indian tribe is bound to give full faith and credit to the public acts, records, and judicial proceedings of a state. Where the state court acts within the scope of its judicial capacity to determine personal jurisdiction and that issue is fully litigated, the State court clearly would not be required to relinquish jurisdiction based upon the court order of a sister state over a year later. The same is true of the subsequent Tribal Court Order.

## JUDICIAL IMMUNITY

■■■ Although we need not reach the question of judicial immunity, this Court finds it appropriate to address this point as an additional basis for dismissal of the claims against defendant Judge David Sam. This Court holds that Judge Sam is absolutely immune from any claim for damages, and that injunctive and declaratory relief against him would serve no purpose.

### A. Claims for Monetary Relief

It is a firmly established principle in our judicial system that judges are immune from liability for acts committed within their judicial capacity. The reason for this judicial immunity, as outlined in *Bradley v. Fisher*, is that judges must be free to act upon their own convictions, without concern of personal consequences to themselves. 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871). Although judicial immunity is not without limitations, "a judge is entitled to judicial immunity if he has not acted in clear absence of all jurisdiction and if the act was a judicial one. An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity ... A judge is entitled to immunity even if he acted with partiality, maliciously, or corruptly." *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir.1985) [citing *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher*, 13 Wall. 335, 348, 80 U.S. 335, 348, 20 L.Ed. 646 (1871) ]. Although there is danger that some wrongs may go unredressed as a result of the application of judicial immunity, our system of justice has found it more tolerable for a few wrongs to go unredressed than for the courts to be constantly harassed by suits brought by disappointed litigants. *Id.* at 436. The questions presented before this Court are whether the alleged wrongful conduct of Judge David Sam occurred outside of Judge Sam's judicial capacity or function and whether Judge Sam acted in clear absence of all jurisdiction. It is clear from the facts that at all times for which wrongful conduct is alleged Judge Sam was acting in his judicial capacity and that all his

acts were judicial ones. Additionally, as has been thoroughly discussed, the ICWA contemplates state courts making determinations of personal jurisdiction in Indian child adoption proceedings and taking jurisdiction in appropriate cases. The state court's jurisdiction under the Act to determine its own jurisdiction constituted judicial action on the part of Judge Sam. Determination of the issues as to domicile and personal jurisdiction certainly was not in clear absence of all jurisdiction, and at the very least constituted a colorable claim of jurisdiction. Therefore, this Court rules that as to the claims for monetary relief, defendant Judge Sam is absolutely immune.

### b. Claims for Injunctive and Declaratory Relief

■ Although the United States Supreme Court recently found that judicial immunity is not a bar to prospective injunctive relief against a judicial officer, nor to the award of attorney's fees under 42 U.S.C. § 1988 in cases where prospective injunctive relief is granted, *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), the question presented here is whether this case is appropriate for collateral prospective relief. Unlike the respondents in *Pulliam*, who sought to enjoin a state Magistrate from requiring bond for a nonincarcerable offense, the plaintiffs in his case do not seek the prospective enjoining of an ongoing unconstitutional practice, but rather seek to reverse a final judgment which resulted from evidentiary hearings in a specific case. The plaintiffs' request is more in the nature of appellate review of the State Court decision. Therefore, this Court finds that the narrow exception to the doctrine of judicial immunity as articulated in the *Pulliam* decision does not apply to the facts of this case, and the claims for declaratory and injunctive relief against defendant David Sam are dismissed.

One additional question that is implicit in the plaintiffs' arguments is whether Section 1983 somehow overcomes the common law doctrine of judicial immunity. That point was thoroughly addressed in the recent case of *Martinez v. Winner*, 548 F.Supp. 278 (D.Utah 1982), *aff'd.* 771 F.2d 424 (10th Cir.1985). That case involved alleged intentionally wrongful and conspiratorial violations of the Civil Rights Act by a judge. Martinez asked the Court to find an exception in such conduct to the common law doctrine of judicial immunity. Chief Judge Jenkins of the District Court for Utah in the initial decision in *Martinez* pointed out that in *Pierson [v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)], the United States Supreme Court held that the common-law doctrine of judicial immunity was not abridged by the enactment of the Civil Rights Act of 1871 as codified in 42 U.S.C. § 1983, and that "State judges are thus immune from suit under § 1983 for their 'judicial' acts." 548 F.Supp. at 292.

This Court finds no basis in law or in fact for plaintiffs' claims against defendant David Sam for monetary or prospective injunctive relief.

For the foregoing reasons, defendants' Motions for Summary Judgment are granted, and plaintiffs' Motion for Summary Judgment is denied.

IT IS SO ORDERED.