**Stephen DOLLA, Plaintiff,**

v.

**UNICAST COMPANY, Defendant.**

**No. 96–CV–2809.**

United States District Court,
E.D. Pennsylvania.

June 26, 1996.

Charles W. Campbell, Norristown, PA, for Plaintiff.

Theodore J. Zeller, III, Allentown, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

#### I

Defendant Unicast Company ("Unicast") seeks an order dismissing three of the five claims contained in Plaintiff Stephen Dolla's complaint pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion is the proper means by which a defendant challenges the legal sufficiency of a complaint. *Jones v. Hinton,* 847 F.Supp. 41, 42 (E.D.Pa.1994). To defeat the motion, the plaintiff must set forth facts which state a claim as a matter of law. *Taha v. INS,* 828 F.Supp. 362, 364 (E.D.Pa.1993). The court must accept as

true all of the factual averments in the complaint and extend to the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## II

The alleged facts, as recited in the complaint, are as follows. Unicast hired Mr. Dolla in September 1990 to work as a foundry man in its steel production plant. In June 1992 and again in March 1993, Unicast "coerced" him to sign "void, unenforceable and illegal" employment agreements. Mr. Dolla further alleges that in April 1994, he was "coerced" into signing a modification of the second employment agreement, by which the term of the second agreement was extended by twelve months. In July of 1994, Mr. Dolla suffered a work-related shoulder injury, which caused him to desire to terminate his employment relationship with Unicast. Notwithstanding this desire, Mr. Dolla contends that he continued to work for Unicast until the week of May 26, 1995 because Unicast's actions "subjugated his will, to the extent that [he] was rendered incapable of making a rational choice about his employment rights." Compl. ¶ 9. These allegedly improper actions included: (1) making known a policy of enforcing the employment agreements by filing lawsuits for money damages against employees; (2) making known a policy of compelling employees to return to their employment if they attempted to quit their jobs; (3) advising employees that they were contractually prohibited from working for other companies for the duration of the employment agreements; and (4) notifying employees that they were indebted to it for the value of any job training. Finally, Mr. Dolla maintains that once he terminated his em-

ployment, Unicast withheld his last paycheck, threatened to prevent him from working at other companies, and threatened to commence legal action for money damages unless he returned to work.

On February 22, 1996, Mr. Dolla filed a five count complaint in the Court of Common Pleas for Berks County, Pennsylvania. Count I asserts that Unicast violated Mr. Dolla's "inherent and indefeasible rights" under Article I, § 1 of the Pennsylvania Constitution. In Count II, Mr. Dolla alleges that Unicast held him in a state of peonage in violation of 18 U.S.C. § 1581 and 42 U.S.C. § 1994. In Count III, Mr. Dolla contends that Unicast held him in a state of involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution. Count IV states a claim for intentional infliction of emotional distress. Finally, in Count V, Mr. Dolla seeks compensation for unpaid wages.

By the instant motion, Unicast challenges the sufficiency of the first three counts of the complaint. With respect to the claims arising under federal law, Unicast contends that Mr. Dolla cannot seek relief under 18 U.S.C. § 1581 and 42 U.S.C. § 1994 since he neither alleged that he performed compulsory service based upon any indebtedness nor asserted that Unicast held him in forced labor to discharge a debt. Further, Unicast maintains that Mr. Dolla cannot recover for a claim of involuntary servitude under the Thirteenth Amendment because courts do not recognize a direct private cause of action under that amendment. We turn now to address these arguments.

## III

### A. *Count II: The Peonage Claim*

As noted above, Mr. Dolla alleges that Unicast held him in a state of peonage, and seeks relief under 42 U.S.C. § 1994 and 18 U.S.C. § 1581. Section 1994 abolishes the practice of peonage,[1] while § 1581 makes the holding of a person in a state of peonage a

---

1. 42 U.S.C. § 1994 states as follows: "The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States ... [and] the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."

criminal offense.[2] Peonage is a "condition of compulsory service, based upon indebtedness of the peon to the master." *United States v. Reynolds,* 235 U.S. 133, 144, 35 S.Ct. 86, 88, 59 L.Ed. 162 (1914); *Clyatt v. United States,* 197 U.S. 207, 215, 25 S.Ct. 429, 430, 49 L.Ed. 726 (1905). Peonage is a form of involuntary servitude, *Taylor v. Georgia,* 315 U.S. 25, 29, 62 S.Ct. 415, 417, 86 L.Ed. 615 (1942), and is characterized by the involuntary performance of labor based upon indebtedness. *Reynolds,* 235 U.S. at 144, 35 S.Ct. at 88; *Clyatt,* 197 U.S. at 215, 25 S.Ct. at 430. Thus, the critical elements of a peonage claim are indebtedness and compulsion. *Reynolds,* 235 U.S. at 144, 35 S.Ct. at 88; *see Turner v. Unification Church,* 473 F.Supp. 367, 375 (D.R.I.1978) (Peonage is "compulsory service based upon the indebtedness of the peon to the master."), *aff'd,* 602 F.2d 458 (1st Cir.1979); *see also Pierce v. United States,* 146 F.2d 84, 86 (5th Cir.1944) (concluding that claim of peonage satisfied where victim alleges and proves that he is held against his will and made to work to pay a debt), *cert. denied,* 324 U.S. 873, 65 S.Ct. 1011, 89 L.Ed. 1427 (1945).

▉ Mr. Dolla's allegations fail to suggest that Unicast held him in a state of peonage. Specifically, the complaint fails to make any allegation that Mr. Dolla owed a debt to Unicast. *Clyatt* 197 U.S. at 215, 25 S.Ct. at 430. There is no express or implicit allegation that Mr. Dolla owed any sum to Unicast. Moreover, there is no allegation that Mr. Dolla was held against his will to satisfy a debt. The complaint only states that Unicast announced generally to *all* employees its intention to implement policies designed to prevent employees from terminating their employment. These allegations merely suggest, however, that Unicast wished to enforce the obligations created by the employment agreements. There is nothing in the complaint to suggest Unicast compelled Mr. Dolla to remain in its employ by the use or threatened use of physical force.

▉ Even assuming, *arguendo,* that Mr. Dolla has sufficiently alleged that he owed a debt and that Unicast compelled him to work in order to satisfy that debt, this Court would conclude that there is no private right of action under § 1581. Several other courts have reached the same conclusion, reasoning that § 1581 should be construed narrowly because it is a criminal statute and because there is no evidence that Congress intended to extend application of § 1581 to the civil context. *Turner,* 473 F.Supp. at 375–77; *Bryant v. Donnell,* 239 F.Supp. 681, 685 (W.D.Tenn.1965). Thus, for this reason as well, Mr. Dolla's peonage claim must be dismissed.

### B. *Count III: The Thirteenth Amendment Claim*

▉ The third cause of action alleges that Unicast held Mr. Dolla in a state of involuntary servitude, which action violated the express prohibition against involuntary servitude contained in the Thirteenth Amendment.[3] The purpose of the amendment is to prohibit conditions of involuntary servitude. *Pollock v. Williams,* 322 U.S. 4, 17–18, 64 S.Ct. 792, 799–800, 88 L.Ed. 1095 (1944). Within the context of the Thirteenth Amendment, the term involuntary servitude

> means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal practice. This definition encompasses those cases in which the defendant holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion.

*United States v. Kozminski,* 487 U.S. 931, 952, 108 S.Ct. 2751, 2764–65, 101 L.Ed.2d 788 (1988).

---

**2.** 18 U.S.C. § 1581 provides in pertinent part: "Whoever holds or returns any person to a condition of peonage ... shall be fined under this title or imprisoned not more than five years, or both."

**3.** The Thirteenth Amendment provides as follows: "Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the* party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const.Amend. XIII, § 1.

■ Several courts have concluded that there is no direct, independent cause of action under the Thirteenth Amendment. *Sanders v. A.J. Canfield Co.*, 635 F.Supp. 85, 87 (N.D.Ill.1986); *Westray v. Porthole, Inc.*, 586 F.Supp. 834, 838–39 (D.Md.1984); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 518 F.Supp. 993, 1012 (S.D.Tex.1981). This court has noted that if a Thirteenth Amendment claim is permitted to go forward, the plaintiff must allege "the essential ingredient of involuntary servitude, which is the inability to avoid continued service." *Atta v. Sun Co., Inc.*, 596 F.Supp. 103, 105 (E.D.Pa.1984) (citations omitted). Thus, if a direct action is to be permitted under the Thirteenth Amendment, the plaintiff must allege that the defendant compelled him to work against his will: "A showing of compulsion is thus a prerequisite to proof of involuntary servitude." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir.1990) (quoting *Flood v. Kuhn*, 316 F.Supp. 271, 281 (S.D.N.Y.1970), *aff'd* 443 F.2d 264 (2nd Cir.1971), *aff'd on other grounds*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)). Where the plaintiff has a choice, however, there can be no involuntary servitude, even if that choice is a painful one. *Kozminski*, 487 U.S. at 950, 108 S.Ct. at 2763–64 (citing *United States v. Shackney*, 333 F.2d 475, 486–87 (2nd Cir.1964)); *see United States v. Booker*, 655 F.2d 562, 563–64 (4th Cir.1981) (migrant workers held in state of involuntary servitude where they were repeatedly threatened with serious injury or death if they attempted to leave without paying their debts and the threats were backed up with severe beatings).

Upon review of the allegations made in the complaint viewed in light of the law as set forth in the above-cited cases, we conclude that Mr. Dolla has failed to allege facts sufficient to state a claim under the Thirteenth Amendment. As previously discussed, while he alludes generally to statements made to all employees concerning their employment status, Mr. Dolla fails to assert that Unicast took specific action as to him which would have either resulted in the subjugation of his will or prevented him from making a rational choice about his employment status. Indeed, the complaint reveals that Mr. Dolla voluntarily terminated his employment in May of 1995. Further, there are no allegations from which a factfinder might conclude that Unicast exercised physical force, or threatened to use such force, in an effort to compel Mr. Dolla to remain on the job. In sum, Mr. Dolla has failed to allege that he was unable to avoid continued service. Accordingly, even if we were to recognize a direct cause of action under the Thirteenth Amendment, the facts alleged here do not suggest that Mr. Dolla could recover under this theory of liability. We are therefore compelled to dismiss his involuntary servitude claim.

### C. The Pendent Claims

■ Having determined that Mr. Dolla's federal peonage and involuntary servitude claims must be dismissed, we now conclude that the pendent claims should be remanded to the Court of Common Pleas pursuant to 28 U.S.C. § 1447(c) for want of jurisdiction over the subject matter. Since both Unicast and Mr. Dolla are citizens of Pennsylvania, we cannot exercise diversity jurisdiction over the complaint. 28 U.S.C. § 1332. Moreover, we are aware of no "special circumstances" that would justify the invocation of our supplemental jurisdiction. *Shaffer v. Board of Sch. Directors*, 730 F.2d 910, 912 (3d Cir.1984). Accordingly, under 28 U.S.C. § 1367(c)(3), this Court will remand the pendent claims to the court from which they originated. *Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1480 (E.D.Pa.1994).

### IV

For the reasons stated above, we will dismiss Counts II and III of Mr. Dolla's complaint and remand the remaining claims to the Court of Common Pleas for Berks County. An appropriate order follows.

### ORDER

AND NOW, this 26th day of June, 1996, upon consideration of Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint, and the response thereto, it is hereby ORDERED, for the reasons set forth in the preceding Memorandum, that said Motion is GRANTED in part. Counts II and III of Plaintiff's complaint are hereby DISMISSED. The remaining claims are hereby

REMANDED to the Court of Common Pleas for Berks County.