**SAMIRAH & Enung, Plaintiffs,**

v.

**Varsha Mahender SABHNANI and Mahender Murlidhar Sabhnani, Defendants.**

**No. 08–cv–2970 (ADS)(WDW).**

United States District Court, E.D. New York.

March 25, 2011.

Fish & Richardson P.C., by: Karen Yeh, Esq., of Counsel, Asian American Legal Defense and Education Fund, by: Ivy O.

Suriyopas, Esq., of Counsel, New York, N.Y., for Plaintiffs, Samirah and Enung.

Sam P. Israel, Esq., New York, N.Y., for Defendants Varsha Sabhnani and Mahender Sabhnani.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs in this case, each known only by a single name, Samirah and Enung, were the victims of the defendants' criminal efforts to force them to work as mistreated and underpaid domestic servants in the defendants' home. On December 17, 2007, the defendants were convicted of a number of federal crimes related to their mistreatment of the plaintiffs. The plaintiffs filed the present civil suit shortly thereafter, asserting various causes of action and seeking monetary damages from the defendants. The plaintiffs now move for summary judgment on all of their causes of action-except for certain claims that they have withdrawn—on the basis that the defendants' criminal convictions collaterally estop the defendants from contesting the plaintiffs' civil claims. For the reasons that follow, the Court grants the plaintiffs' motion in part and denies it in part.

## I. BACKGROUND

The history of the criminal matter related to the present case has been extensively chronicled by this Court and the Second Circuit. See *United States v. Sabhnani*, 599 F.3d 215 (2d Cir.2010) ("*Sabhnani Verdict Appeal*"); *United States v. Sabhnani*, 493 F.3d 63 (2d Cir.2007); *United States v. Sabhnani*, 539 F.Supp.2d 617 (E.D.N.Y.2008). In addition, the Court has issued two prior decisions in this case, *Samirah & Enung v. Sabhnani*, No. 08–cv–2970, 2010 WL 2629770 (E.D.N.Y. Jun. 28, 2010) and *Samirah & Enung v. Sabhnani*, No. 08–cv–2970, DE # 75

(E.D.N.Y. Aug. 27, 2010). Although the Court assumes the parties' familiarity with the underlying facts and procedural history of the criminal matter and this related civil case, a brief review is in order.

The defendants in this case, Varsha Sabhnani and Mahender Sabhnani, are husband and wife. Prior to May 2007, they lived together with their children and the plaintiffs in a home in Syosset, New York. In December 2007, the defendants were convicted, after a jury trial, of two counts each of forced labor in violation of 18 U.S.C. § 1589(a), harboring aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), holding a person in a condition of peonage in violation of 18 U.S.C. § 1581(a), and document servitude in violation of 18 U.S.C. § 1592(a), as well as conspiracy to commit each of these substantive offenses. In reaching this verdict, the jury essentially found Varsha and Mahender had forced the plaintiffs to work as domestic servants in the Sabhnani home while being physically abused for little pay and under very poor conditions. Neither defendant testified at the trial.

Following the defendants' convictions, the Court awarded the plaintiffs restitution pursuant to 18 U.S.C. § 1593, which provides for mandatory restitution in cases of peonage, slavery and trafficking. Under Section 1593, the Court calculates restitution as the payment that a victim of peonage, slavery, or trafficking should have been given for her labor pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA"). Applying this law, the Court awarded Samirah $310,371.91 and awarded Enung $157,901.20 in back wages. The Court also awarded Samirah and Enung an additional $310,371.91 and $157,901.20, respectively, as liquidated damages. *See U.S. v. Sabhnani*, 566 F.Supp.2d 139, 147 (E.D.N.Y.2008), *overruled in part by Sabhnani Verdict Appeal*, 599 F.3d at 256.

The defendants appealed their convictions and the award of restitution to the Second Circuit. The Second Circuit affirmed the convictions and restitution award except as to one aspect. This Court had awarded back wages to Samirah and Enung based on a calculation of overtime pay for each hour they worked over forty hours per week. However, the Second Circuit found that Samirah and Enung were not entitled to overtime pay under the FLSA because, as domestic servants residing in their employer's household, they were exempt employees. *Sabhnani Verdict Appeal,* 599 F.3d at 256. The Second Circuit therefore remanded the restitution award calculation, with directions to recalculate the restitution without including overtime payments. The Second Circuit affirmed all other aspects of the verdict and restitution award.

On July 22, 2008, after the verdict and restitution award were entered, but before the Second Circuit issued its decision in the *Sabhnani Verdict Appeal,* the Plaintiffs commenced the instant civil lawsuit. The plaintiffs originally asserted eleven causes of action against both of the defendants, seeking money damages under the Trafficking Victims Protection Act, 18 U.S.C. § 1595, federal and state wage laws, and the common law. The plaintiffs have since withdrawn certain of these causes of action. On July 1, 2010, the plaintiffs moved for summary judgment on all of their remaining causes of action, asserting that the defendants' criminal convictions collaterally estop the defendants from challenging any of the plaintiffs' claims. The defendants oppose the plaintiffs' motion in its entirety.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting "mere metaphysical doubt" upon the evidence produced by the moving party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

**B. The Legal Standard for Application of the law of Collateral Estoppel to a Criminal Defendant Sued by a Victim of the Defendant's Crime**

 Collateral estoppel is the legal doctrine stating that a party may not re-litigate an issue after having once been given a full opportunity to do so. This case involves use of a type of collateral estoppel sometimes termed "offensive collateral estoppel", whereby a person not party to an original lawsuit attempts in a subsequent lawsuit to collaterally estop a party to the original lawsuit from re-litigating an issue it lost in the original suit. Thus, here, Samirah and Enung were not parties to the criminal proceeding against Varsha and Mahender. However, Samirah and Enung nevertheless assert that Varsha and Mahender are estopped from re-litigating any of the issues resolved in the criminal case.

In *Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38 (2d Cir.1986), the Second Circuit generally approved the use of this type of collateral estoppel by victims of crimes asserting civil claims against convicted criminals. The court reasoned that, "[b]ecause mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction." *Id.* at 43 (internal quotations omitted). The *Gelb* court then articulated four requirements that must be satisfied in applying the doctrine of collateral estoppel:

(1) the issues in both proceedings must be identical,

(2) the issue in the prior proceeding must have been actually litigated and actually decided,

(3) there must have been a full and fair opportunity for litigation in the prior proceeding, and

(4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.* at 44; *see also City of New York v. Venkataram*, No. 06–cv–6578, 2009 WL 1938984, *5 (S.D.N.Y. Jul. 7, 2009) (applying Gelb); *Crum & Forster Ins. Co. v. Goodmark Industries, Inc.*, 488 F.Supp.2d 241, 245 (E.D.N.Y.2007) (Spatt, J.) (same); *Doe v. City of Waterbury*, 453 F.Supp.2d 537, 550 (D.Conn.2006) (same). The Court will apply these requirements to the present motion for summary judgment in this case.

**C. As to the Defendants' General Objections' to the Application of Collateral Estoppel to the Present Case**

The defendants assert numerous objections to specific causes of action for which the plaintiffs seek summary judgment. However, the defendants also assert two general objections that apply to all of the plaintiffs' causes of action. Namely, the defendants contend that (1) the claims against the defendants were not fully litigated because the defendants invoked their Fifth Amendment right to avoid self-incrimination, and (2) the defendants are entitled to have Samirah submit to a mental examination prior to any grant of summary judgment in the plaintiffs' favor. In the determination of this important issue, the Court will first address these general objections.

**1. As to the Effect of the Defendants' Failure to Testify in the Criminal Proceeding**

 In this regard, the defendants essentially assert that the third prong of the *Gelb* test—"that there must have been a full and fair opportunity for litigation in the prior proceeding"—is not met here because the defendants chose not to testify in their own defense at their criminal trial. In support of this contention, the defen-

dants state that "[i]f criminal charges were not brought, the Defendants would have testified in the civil case," and also that "[i]t is impossible to calculate the effect the Defendants['] testimony would have had in the criminal case had they denied the truthfulness of the Plaintiffs' testimony." (Defs.' Opp. at 16.) The defendants conclude that in this civil case they are entitled to testify on their own behalf, and that invoking the doctrine of collateral estoppel in the present case would wrongly deprive them of that right.

The Court is not persuaded by this line of reasoning. First, the defendants present no cases that support the conclusion that they urge. The first two cases on which the defendants rely, *Culberson v. Doan*, 72 F.Supp.2d 865, 872–73 (S.D.Ohio 1999) and *Walden v. State*, 47 Ohio St.3d 47, 51–52, 547 N.E.2d 962, 965–67 (1989), apply the Ohio law of collateral estoppel, which, unlike federal law, *does* generally require mutuality of parties for the application of collateral estoppel. That is, in contrast to *Gelb*, generally, Ohio law. does not permit a person not party to a prior lawsuit to invoke offensive collateral estoppel. *See id.* The third and fourth cases cited by the defendants on this issue are factually inapposite to the present case. *See Edwell v. Chase*, Nos. 05–cv–19, 05–cv–34, 05–cv–43, 2005 WL 3664804, *4 (D.N.M. Dec. 7, 2005) (finding that a defendant was not collaterally estopped from denying plaintiffs' claims merely because the plaintiffs had offered testimony against the defendant in a prior case in which the defendant was found liable); *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924 (7th Cir.1983) (holding that a valid assertion of the Fifth Amendment privilege in a civil case may not be treated as an admission that allegations are true).

By contrast, other courts have expressly held that invocation of the Fifth Amendment privilege in a prior proceeding does not preclude offensive collateral estoppel in a later proceeding. *See, e.g., In re Brown*, 427 B.R. 715 (D.Minn.2010); *Fed. Trade Comm'n v. Abeyta*, 387 B.R. 846, 853 (Bankr.D.N.M.2008) ("There is no requirement that the defendant actually testify in his or her defense in the prior proceedings in order to satisfy the requirement that issues be 'actually litigated' in the prior proceeding. Thus even when a party invokes his Fifth Amendment privilege in the prior suit, the ?actually litigated' requirement for purposes of collateral estoppel may nevertheless be satisfied." (citations, some internal quotation marks, and alteration omitted)).

In the Court's opinion, this latter view is correct. The defendants were free to testify on their own behalf in the criminal proceeding, but chose not to do so. The defendants obviously had more to lose in the criminal case than they do in a civil proceeding, but nevertheless chose to remain silent when the stakes were highest. That was their privilege. However, that the defendants are now bound by that decision in the present litigation is a fair and reasonable conclusion.

Thus, the Court finds that the defendants' invocation of their Fifth Amendment privilege in the criminal proceeding does not affect the concept of whether the defendants had a "full and fair opportunity for litigation in the prior proceeding", *Gelb*, 798 F.2d at 44, and is no bar to the application of the doctrine of collateral estoppel.

## 2. The Effect of the Defendants' Request that Samirah Submit to a Mental Examination

█ The defendants also assert that they are entitled to have the plaintiff Samirah submit to a mental examination under Fed.R.Civ.P. 35, and that the present lack of this examination bars the application of the doctrine of offensive collateral

estoppel. In reply, the plaintiffs note that the defendants sought and were denied a mental examination of Samirah in the criminal action, and that the defendants are now estopped from asking the Court to grant the same examination in this action.

As a preliminary matter, the plaintiffs' opposition to the defendants' request for a mental examination on estoppel grounds is not convincing. The defendants previously sought a mental examination of Samirah under the Federal Rules of Criminal Procedure, and now seek a mental examination under the substantially more liberal Rule 35 of the Federal Rules of Civil Procedure. As the present standard is lower than the standard previously applied, the defendants are not precluded from again raising this issue.

■ Nevertheless, the Court finds that the defendants are not entitled to a mental examination of Samirah with respect to the issue of liability. Rule 35 provides in pertinent part that "[t]he court ... may order a party whose mental ... condition ... is in controversy to submit to a ... mental examination by a suitably licensed or certified examiner," and that such an order may be issued only for "good cause." While this rule is usually construed liberally, it is subject to broad discretion in its application. *See, e.g., Ziemba v. Armstrong,* No. 98–cv–2344, 2004 WL 834685, *1 (D.Conn. Mar. 15, 2004).

In this case, the Court sees no basis for a mental examination of Samirah with respect to the liability portion of this case. As the Second Circuit noted in the *Sabhnani Verdict Appeal,* "[t]he jury had a full opportunity in this case to assess Samirah's credibility, and a psychiatric examination would not have added measurably to its ability to do so. Samirah testified for part or all of six days, and faced extensive cross-examination." 599 F.3d at 235. Just as they did in their criminal appeal, the defendants presently suggest that Sa-

mirah's mental state is in question by pointing to testimony that Samirah believed that Varsha exercised magical powers over Samirah's son. However, the Second Circuit's analysis of this argument in the criminal context applies here, even when applying the lower Rule 35 standard, namely: "That the jury heard this testimony [ ] only further undermines any claim that a psychiatric examination was needed to assist the jury in evaluating Samirah's state of mind." *Id.* at 236. Having considered the relevant evidence and the law, the Court finds that the defendants are not entitled under Rule 35 to a mental examination of Samirah on the issue of liability. Thus, the lack of such an examination does not prevent the application of the doctrine of collateral estoppel.

■ Of course, the defendants would be entitled to a mental examination of Samirah and Enung with respect to any emotional or mental suffering alleged as damages by the plaintiffs. *See, e.g., Schlagenhauf v. Holder,* 379 U.S. 104, 119, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) ("A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury" (internal citation omitted)). Therefore, to the extent that the plaintiffs continue to seek damages based on mental or emotional suffering, the Court directs the plaintiffs to meet with the defendants to arrange for a mutually suitable time for a mental examination of both of the plaintiffs, on the issue of damages.

**D. As to the Defendants' Specific Objections to the Application of Collateral Estoppel in the Present Case**

Of the plaintiffs' eleven original causes of action, the plaintiffs now seek summary

judgment on nine. (Because the plaintiffs have styled their causes of action for assault and battery as a single claim, for the sake of simplicity the Court refers to these two distinct causes of action collectively.) The plaintiffs have withdrawn their fourth cause of action, a RICO claim, as well as their sixth cause of action, for federal overtime wages, with respect to both defendants. In addition, the plaintiffs have dismissed their claim for battery against Mahender, which formed part of the plaintiffs' eleventh cause of action. The chart below lists each of the plaintiffs' causes of action to be pursued against the defendants, as well as the relevant basis for application of collateral estoppel identified by the plaintiffs. The Court will then address the issue of collateral estoppel with respect to each of these causes of action.

| Cause of Action | Civil claim | Basis for Collateral Estoppel |
|---|---|---|
| 1 | Forced Labor, 18 U.S.C. § 1589(a), pursuant to 18 U.S.C. § 1595 | The defendants' conviction of forced labor 18 U.S.C. § 1589(a) |
| 2 | Peonage and involuntary servitude, 18 U.S.C. §§ 1581 and 1584, pursuant to 18 U.S.C. § 1595 | The defendants' conviction of peonage, 18 U.S.C. § 1581 |
| 3 | Trafficking with respect to peonage, 18 U.S.C. § 1590, pursuant to 18 U.S.C. § 1595 | The defendants' conviction of harboring aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and forced labor, 18 U.S.C. § 1589(a) |
| 4 | *Withdrawn* | |
| 5 | Federal minimum wage violation, 29 U.S.C. § 201 et seq. | The defendants' conviction of forced labor and peonage, as well as the Court's ruling on restitution in *Sabhnani*, 566 F.Supp.2d at 147, *overruled in part by Sabhnani Verdict Appeal*, 599 F.3d at 256 |
| 6 | *Withdrawn* | |
| 7 | New York State minimum wage violation, New York Labor Law §§ 190, 650 | The defendants' conviction of forced labor and peonage, as well as the Court's ruling on restitution in *Sabhnani*, 566 F.Supp.2d at 147, *overruled in part by Sabhnani Verdict Appeal*, 599 F.3d at 256 |
| 8 | New York State overtime violation, New York Labor Law §§ 190, 650 | The defendants' conviction of forced labor and peonage, as well as the Court's ruling on restitution in *Sabhnani*, 566 F.Supp.2d at 147, *overruled in part by Sabhnani Verdict Appeal*, 599 F.3d at 256 |
| 9 | New York State spread of hours violation, New York Labor Law §§ 190, 650 | The defendants' conviction of forced labor and peonage, as well as the Court's ruling on restitution in *Sabhnani*, 566 F.Supp.2d at 147, *overruled in part by Sabhnani Verdict Appeal*, 599 F.3d at 256 |
| 10 | Common law false imprisonment | The defendants' conviction of forced labor, 18 U.S.C. § 1589(a) |
| 11(a) | Common law assault | The defendants' conviction of forced labor, 18 U.S.C. § 1589(a), and Varsha's conviction of harboring aliens, 8 U.S.C. § 1324(a)(1)(A)(iii) |
| 11(b) | Common law battery (only against Varsha) | Varsha's conviction of harboring aliens, 8 U.S.C. § 1324(a)(1)(A)(iii) |

### 1. As to the Plaintiffs' First Cause of Action: Forced Labor

The plaintiffs' first cause of action is based on the defendants' commission of forced labor, 18 U.S.C. § 1589(a). The plaintiffs seek damages under this criminal statute pursuant to the Trafficking Victims Protection Act, 18 U.S.C. § 1595, which provides that victims of forced labor may assert a civil cause of action for damages against the perpetrators of this crime.

The defendants present no reasonable basis to challenge the application of collateral estoppel with respect to this cause of action. Both of the defendants were convicted of forced labor, and that conviction was upheld by the Second Circuit. To the

extent that the defendants assert that their testimony would change the outcome of this cause of action, the Court has, in this opinion, rejected this basis for opposing the application of collateral estoppel. The Court therefore grants the plaintiffs' motion for summary judgment based on collateral estoppel on the plaintiffs' first cause of action, forced labor, 18 U.S.C. § 1589(a).

### 2. As to the Plaintiffs' Second Cause of Servitude Peonage and Involuntary

The plaintiffs' second cause of action is for monetary damages for the defendants' violation of 18 U.S.C. §§ 1581 and 1584. Section 1581 makes it a crime to "hold[ ] . . . any person to a condition of peonage", while Section 1584 makes it a crime to "knowingly and willfully hold[ ] to involuntary servitude . . . any other person for any term." Although the plaintiffs list Section 1584 in their complaint as a basis for their second cause of action, the plaintiffs' memorandum of law discusses only summary judgment on the second cause of action based on Section 1581. Oddly, the defendants do not respond to the discussion of Section 1581, but refer only to Section *1584*. Also strange is that the plaintiffs in reply only discuss Section 1584 as well. Nevertheless, the distinction between Sections 1581 and 1584—which, in any event, is not great—does not affect the outcome of the present motion, and the Court generally assumes that when a party is discussing one of these two statutes, it also intended to discuss the other.

As a substantive matter, the application of collateral estoppel for this cause of action is straightforward. The defendants were found guilty in the criminal action of violating Section 1581, so they are collaterally estopped from challenging the substance of their violation of Section 1581. In addition, the jury's verdict on Section 1581, taken in combination with the jury's

finding that the defendants obtained the defendants' service though threats of serious harm or physical restraint, also satisfies all of the elements of Section 1584. Thus, the defendants are also collaterally estopped from challenging the substance of their violation of Section 1584.

■ Nevertheless, while the defendants do not challenge their substantive violation of Sections 1581 and 1584, they do argue that the plaintiffs have no basis to assert a civil cause of action for violation of these criminal statutes. Originally, the plaintiffs sought damages for violations of Sections 1581 and 1584 pursuant to the Trafficking Victims Protection Act, 18 U.S.C. § 1595, which explicitly provides victims a right to assert civil causes of action for violation of Sections 1581 and 1584. However, the defendants correctly point out that, prior to the amendment of the Trafficking Victims Protection Act in 2008, that act did not provide for a civil cause of action for violations of Sections 1581 or 1584. The defendants conclude that, because all of the acts underlying the defendants' convictions took place between 2003 and 2007, the plaintiffs have no valid civil cause of action based on Sections 1581 or 1584.

In response to this challenge, the plaintiffs admit that, prior to its 2008 amendment, the Trafficking Victims Protection Act did not expressly provide civil remedies for Sections 1581 or 1584. The plaintiffs also concede that the present version of the act has no retroactive effect. However, the plaintiffs contend that they nevertheless have a valid Section 1581 and 1584 cause of action because, prior to 2008, there was an *implied* civil cause of action based on violations of Sections 1581 and 1584.

Prior to 2008, federal courts were generally divided on the issue of whether an implied civil cause of action existed under Sections 1581 or 1584. *See Javier H. v.*

*Garcia–Botello,* 239 F.R.D. 342, 346–47 (W.D.N.Y.2006) (finding that a civil cause of action exists under Section 1584); *Manliguez v. Joseph,* 226 F.Supp.2d 377, 385 (E.D.N.Y.2002) (same); *Flood v. Kuhn,* 316 F.Supp. 271, 281–82 (S.D.N.Y.1970) (same); *but see Buchanan v. City of Bolivar, Tenn.,* 99 F.3d 1352, 1357 (6th Cir. 1996) (finding that *no* civil cause of action exists under Section 1584); *Joynes v. Meconi,* No. 05–cv–332, 2006 WL 2819762, *10 (D.Del. Sept. 30, 2006) (finding that *no* civil cause of action exists under Sections 1581 or 1584); *Dolla v. Unicast Co.,* 930 F.Supp. 202 (E.D.Pa.1996) (finding that *no* civil cause of action exists under Section 1581). Having reviewed the relevant cases and the parties' arguments, the Court is persuaded that a civil cause of action did exist under Sections 1581 and 1584 prior to 2008. The Court therefore finds that there is no bar to the plaintiffs' causes of action pursuant to these sections.

The Court having found that the defendants are estopped from litigating their violations of these Sections 1581 and 1584, the Court now grants the plaintiffs' motion for summary judgment on their second cause of action, based on peonage and involuntary servitude, 18 U.S.C. §§ 1581 and 1584.

### 3. As to the Plaintiffs' Third Cause of Action: Trafficking with Respect to Peonage

█ The plaintiffs' third cause of action is for damages for violation of 18 U.S.C. § 1590, which provides penalties for a person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services [for purposes of, among other things, peonage]." As with the plaintiffs' first cause of action, the Trafficking Victims Protection Act, 18 U.S.C. § 1595, has at all relevant times provided that victims of this crime may assert a civil cause of action for damages against the crime's perpetrators.

However, unlike the plaintiffs' first cause of action, the defendants were not convicted of a crime under Section 1590, namely, trafficking with respect to peonage. Thus, the plaintiffs rely on the defendants' convictions for harboring aliens, 8 U.S.C. § 1324(a)(1)(A)(iii) and forced labor, 18 U.S.C. § 1589(a) to satisfy the elements of Section 1590. The Court has reviewed the elements of harboring aliens and forced labor, and finds that, based on those convictions, all of the elements of Section 1590, trafficking with respect to peonage, have been proven beyond a reasonable doubt.

For their part, the defendants primarily challenge this conclusion by suggesting that there was "no evidence in the criminal case that Mahender engaged in fraud, force or coercion of any kind." (Defs.' Opp. at 10.) Given jury's express finding that Mahender obtained the plaintiffs' labor through threats of serious harm and physical restraint, this contention is without basis. (See Sabhnani Jury Verdict Sheet at 2.) The defendants' only other objection, that the defendants' testimony raises triable issues of fact, has, again, been previously rejected.

The Court therefore grants the plaintiffs' motion for summary judgment on their third cause of action, based on trafficking with respect to peonage, 18 U.S.C. § 1590.

### 4. As to the Plaintiffs' Fifth and Seventh Causes of Action: Federal and State Minimum Wage Violations

█ The plaintiffs assert as their fifth and seventh causes of action violation of the federal minimum wage laws, pursuant to the FLSA, as well as violation of New York State minimum wage laws, pursuant to the New York Labor Law. The plaintiffs premise their collateral estoppel argument

for these causes of action on the defendants' conviction for peonage and forced labor, as well as the Court's determination of restitution in *Sabhnani,* 566 F.Supp.2d at 139, which involved a calculation of the hours that the plaintiffs worked for the defendants and the compensation due them under the FLSA.

■■■ The defendants do not contest that they violated the federal or state minimum wage labor laws, but rather assert solely that summary judgment is not appropriate because the Court has already awarded the plaintiffs restitution that is based on the FLSA's minimum wage requirements. The defendants contend that to allow the plaintiffs to proceed on their fifth and seventh causes of action "would expose the Defendants to double jeopardy, if not comprising cruel and unusual punishment under the Eighth Amendment." (Defs.' Opp. at 11.)

■■■ The defendants' argument on this issue is not compelling. First, the double jeopardy clause, as well as the Eighth Amendment prohibition on cruel and unusual punishment, exclusively proscribe government actions, and do not limit private persons' rights to prosecute lawsuits. *See, e.g., Hudson v. U.S.,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) ("The [double jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense" (emphasis in original)); *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"); *Whitley v. Albers,* 475 U.S. 312, 318–19, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes, and consequently the Clause applies only after the state has complied with the constitutional guarantees traditionally associated with

criminal prosecutions.? (internal quotations omitted)).

In addition, as the plaintiffs aptly point out, restitution "is not a judicial determination of damages," but is rather an equitable remedy, subject to the general "equitable principle that [it] is granted to the extent and only to the extent that justice between the parties requires." *U.S. v. Barnette,* 10 F.3d 1553, 1556 (11th Cir. 1994) (internal quotations omitted, alteration in original). Therefore, the Court finds no basis for concluding that the previous award of restitution bars the plaintiffs from now seeking actual civil damages from the defendants.

To be sure, the plaintiffs' damages may be partially or fully limited by the restitution payments already made to them. However, this is an issue relevant to the calculation of damages, not an issue that affects the validity of the plaintiffs' cause of action. Thus, finding that all of the elements of the plaintiffs' minimum wage claims were satisfied in the criminal proceeding, and that the plaintiffs are not barred from seeking relief under the federal and New York minimum wage statutes, the Court grants the plaintiffs' motion for summary judgment on their fifth and seventh causes of action, for violation of federal and state minimum wage laws.

### 5. As to the Plaintiffs' Eighth and Ninth Causes of Action: New York State Overtime and Spread of Hours Claims

In their original complaint, the plaintiffs sought to recover for the defendants' failure to pay them overtime wages pursuant to the FLSA. However, the plaintiffs have now withdrawn that cause of action, based on the Second Circuit's determination that the plaintiffs, as domestic workers residing in the defendants' home, were exempt from the FLSA's overtime rules. Never-

theless, the plaintiffs have not withdrawn their causes of action for violation of New York State's overtime and spread of hours laws, which are distinct from the FLSA's overtime laws.

In particular, the plaintiffs assert that, pursuant to 12 N.Y.C.R.R. § 142–2.2, the plaintiffs are entitled to one and a half times the minimum wage for each hour over forty-four that they worked each week, despite the fact that they were domestic employees residing in the defendants' home. The plaintiffs also assert that, pursuant to 12 N.Y.C.R.R. § 142–2.4, they are entitled to an extra hour of pay at the minimum wage rate for each day they worked for the defendants, because the spread of hours in their work days was invariably sufficient to qualify for this statutorily required bonus.

▉▉▉▉ The Court finds that both of these causes of action are valid, and that the defendants are estopped from challenging both. Section 142–2.2 explicitly states that, in contrast to the FLSA overtime exception for resident domestic workers, New York State law provides resident domestic employees a right to be paid at least one and a half times the minimum wage for each hour worked over forty-four in a week. The Court has already found in the criminal proceeding that the plaintiffs worked more than forty-four hours per week, and therefore the defendants are estopped from re-litigating this issue. As for Section 142–2.4, that statute provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours [defined as the time from the start of the work day to the end of the work day] exceeds 10 hours." The Court has also already found that the spread of hours in the defendants' work days was greater than 10 hours, so

the defendants are similarly estopped from re-litigating this issue.

The defendants do not contest this conclusion on the merits, but rather contend that, because the Second Circuit held that the plaintiffs were exempt from overtime pay under the FLSA, then the plaintiffs are not entitled to recover under New York State overtime and spread of hours statutes. This, is an assertion without merit, as the New York State labor law explicitly provides for recovery that is not available to residential domestic workers under the FLSA. The Court therefore grants the plaintiffs' motion for summary judgment on their eighth and ninth causes of action, New York State overtime and spread of hours violations.

### 6. As to the Plaintiffs' Tenth Cause of Action: False Imprisonment

The plaintiffs' tenth cause of action is for common law false imprisonment. As the defendants were not convicted of false imprisonment, the plaintiffs rely on the defendants' conviction for forced labor, 18 U.S.C. § 1589(a), to show that the defendants are estopped from litigating the claim of false imprisonment. Pursuant to *Gelb*, the Court must therefore consider whether all of the elements of false imprisonment were fully litigated and found by the jury in convicting the defendants of forced labor.

▉▉▉ Under New York law, the elements of false imprisonment are:

(1) the defendant intended to confine the plaintiff,

(2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and

(4) the confinement was not otherwise privileged.

*Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (paragraphing added, internal alteration omitted). In finding the defendants guilty of forced labor, the jury found that each of the defendants:

(1) "knowingly", 18 U.S.C. § 1584(a),

(2) "obtained the labor or services" of the plaintiffs, (Sabhnani Verdict Sheet at 2),

(3) through "threats of serious harm or physical restraint" and "a scheme, plan or pattern intended to cause [the plaintiffs] to believe that non-compliance would result in serious harm." (*Id.*)

█ Reviewing the elements of these respective causes of action, the Court agrees with the plaintiff that all of the elements of false imprisonment were necessarily found by the jury in convicting the defendants of forced labor. By knowingly obtaining the plaintiffs' labor through use of threats of serious harm or physical restraint, the defendants necessarily confined the plaintiffs to the space in which they were forced to work. Also, the only reasonable conclusion from the record and the jury's determination that the plaintiffs believed that non-compliance with the defendants' directions would result in serious harm, is that the plaintiffs were aware of the confinement and did not consent to it. Finally, there is no evidence or suggestion that the plaintiffs' confinement was privileged.

In opposing summary judgment on this cause of action, the defendants primarily assert that there was no finding in the criminal proceeding that Mahender acted to *intentionally* confine the plaintiffs, because there is no evidence that he "made 'threats' or engaged in ?physical abuse'." (Defs.' Opp. at 13.) The Court again disagrees. The Second Circuit has upheld the jury's specific finding that Mahender obtained the plaintiffs' service "through threats of serious harm or physical restraint". (Sabhnani Verdict Sheet at 2.) In the Court's view, this finding by the jury is conclusive of Mahender's intent to confine the plaintiffs.

█ Finally, the defendants assert that the plaintiffs' cause of action for false imprisonment, as well as their causes of action for assault and battery, are barred by the relevant New York State statute of limitations for torts. The defendants assert that the statute of limitations for false imprisonment, assault, and battery is one year, and that the present case, commenced on July 22, 2008, was brought more than a year after the last day either Samirah or Enung was in the Sabhnani household, May 13, 2007.

However, as the plaintiffs correctly point out, New York CPLR § 213–B provides, that, [n]otwithstanding any other limitation "[on the relevant tort claims] . . . an action by a crime victim . . . may be commenced to recover damages from a defendant: (1) convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom within seven years of the date of the crime. . . ." The crimes for which the defendants were convicted are obviously the subject of the plaintiffs' present civil action, and the applicable seven year statute of limitations thus renders the plaintiffs' claims for false imprisonment, assault, and battery timely.

The Court therefore grants the plaintiffs' motion for summary judgment on the plaintiffs' tenth cause of action, based on false imprisonment.

### 7. As to the Plaintiffs' Eleventh Cause of Action: Assault and Battery

█ The plaintiffs' eleventh and final cause of action is for assault and battery. Against Varsha, the plaintiffs assert causes of action for both assault and battery, but against Mahender, only a cause of action for assault. Aside from the statute of

limitations issue addressed above, the defendants offer no opposition to finding that Varsha is estopped from litigating the plaintiffs' causes of action for both assault and battery. The Court has reviewed the jury's findings on which the plaintiffs base their assault and battery claims against Varsha—namely, the findings that Varsha threatened serious harm or physical restraint and caused serious bodily injury to the plaintiffs—and agrees that they satisfy the elements of common law assault and battery. The Court therefore grants the plaintiffs' motion for summary judgment on their eleventh cause of action for assault and battery with respect to Varsha.

The only remaining issue with this cause of action is whether Mahender is estopped from litigating his liability for allegedly assaulting the plaintiffs. One of only a few differences in the jury's findings with respect to Varsha and Mahender was that, while the jury found that Varsha caused serious bodily injury to the plaintiffs, they did not find that Mahender did so. Rather, the jury found only that Mahender used "threats of serious harm or physical restraint" and a "scheme, plan or pattern intended to cause [the plaintiffs] to believe that non-compliance would result in serious harm" in securing the plaintiffs' services. (Sabhnani Verdict Sheet at 2.) It is this finding alone on which the plaintiffs base their argument for collateral estoppel.

 Under New York law, " '[t]o sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact.' " *Marilyn S. v. Independent Group Home Living Program, Inc.,* 73 A.D.3d 892, 894, 903 N.Y.S.2d 403 (2d Dep't 2010) (quoting *Fugazy v. Corbetta,* 34 A.D.3d 728, 729, 825 N.Y.S.2d 120 (2d Dep't 2006)). In the Court's view, the findings that Mahender used "threats of serious harm or physical restraint" and a "scheme,

plan or pattern intended to cause [the plaintiffs] to believe that noncompliance would result in serious harm" in securing the plaintiffs' services are insufficient to estop Mahender from litigating his liability for assault. Under the fourth factor of the *Gelb* "test, the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb,* 798 F.2d at 43. The findings by the criminal jury described above do not require that Mahender took any *physical acts* that placed the plaintiffs in *imminent* fear of harmful contact. The Court therefore denies the plaintiffs' motion for summary judgment on their eleventh cause of action for assault against Mahender.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the plaintiffs' motion for summary judgment is granted in all respects, *except* with respect to the plaintiffs' motion for summary judgment against the defendant Mahender Sabhnani for common law assault, for which the plaintiffs' motion for summary judgment is denied; and it is further

ORDERED that the parties are directed to appear telephonically before United States Magistrate Judge William D. Wall on Tuesday, March 29, 2011 at 11:30 a.m. to address any outstanding discovery issues in this case. The plaintiffs are directed to initiate the call into Judge Wall's chambers.

**SO ORDERED.**